[No. 32728. Department One. December 3, 1954.]

THE STATE OF WASHINGTON, *Respondent*, v. LEE F. SCHEELER, *Appellant*.[1]

[1]Reported in 277 P. (2d) 341.

*Simmons & Yates*, for appellant.

*Charles O. Carroll* and *Murray B. Guterson*, for respondent.

OLSON, J.—Defendant was charged by information, in statutory language, with the crime of murder in the second degree. Allegedly, the victim was mortally wounded by a bullet from a revolver fired by defendant. Self-defense was pleaded. The jury found defendant guilty of the included offense of manslaughter, and he has appealed from the judgment entered upon that verdict.

The evidence shows that the victim and his wife had separated, and that she had started an action for divorce. About midnight, defendant was visiting in the wife's home. He observed an automobile in front of the house. Its lights were being turned on and off, and it was driven away and returned several times. Defendant unsuccessfully tried to find an officer in the neighborhood, and, when he was returning, someone tried to back a car into the side of his automobile. When the wife was out in the street trying to obtain the license number on the car, an attempt was made to drive it over the curb to strike her. The disturbance continued for some time, and the wife told defendant that she thought it was being caused by her husband.

Finally, she told defendant that there was someone in the back yard. Defendant took a revolver and went out to investigate. He was standing in front of his car, which was parked near the back porch of the house, when "a man ran

towards me and jumped in the air and said 'hi' and then I fired one shot and I froze in my tracks. The man was about three feet from me.  .  .  .  His hands were in the air, coming towards me." The victim ran on toward the front of the house, brushing defendant's shoulder as he passed him. He was found in the street by the sheriff's deputies. He was identified as the husband, and was taken to a hospital, where he died shortly after his arrival. Defendant, not knowing where his victim had gone or the extent of his injuries, if any, left the house and called the sheriff's office, saying that he had shot at a man. After his return, he was taken into custody.

■ Defendant's first contention is that there is no evidence to justify submission of the included offense of manslaughter to the jury. He correctly contends that a defendant may not be convicted of a lesser degree of crime which is included in a greater degree, unless evidence is adduced to sustain a conviction upon the lesser degree. The inclusion of the lesser degree within the greater must be an inclusion in fact as well as one in law. No question of the weight of the testimony is involved in the application of this rule. It is applicable only when there is no testimony whatever tending to show the commission of the lesser degree of crime. On the other hand, the lesser degree of crime must be submitted to the jury together with the greater degree, unless the evidence positively excludes any inference that the lesser crime was committed.

■ Where, as here, the killing of a human being is admitted by the defendant, it is presumed to constitute the crime of murder in the second degree. The burden is upon the state to raise the charge to murder in the first degree. The defendant bears the burden of justifying his act or reducing the charge to manslaughter. *State v. Gallagher*, 4 Wn. (2d) 437, 447 *et seq.*, 103 P. (2d) 1100 (1940), and cases cited.

Defendant admitted that he voluntarily shot his victim. He pleaded self-defense. He testified:

"Q. You intended to shoot this figure that you saw out there? A. At that time, but not with the intention of killing him. Q. You just wanted to shoot him, but not kill him? A. That is right. . . . Q. You said, Lee, that you intended to shoot the man but you did not intend—that you did not have a design to effect his death. What was the purpose of the shooting? A. Well, I was standing out there and this man jumped in the air, and I was in the midst of the attack, and naturally I was scared to death, and just on the impulse I pulled the trigger. Q. To defend yourself? A. That is correct."

■ This testimony presented a question for the jury upon the issue of defendant's alleged intention "to effect the death" of his victim. The jury was warranted in finding that defendant used more force than necessary to protect his person, and that, in so doing, he inflicted the injuries which caused death. In the absence of justification or excuse, the evidence in this case sustains a conviction of the crime of manslaughter, and it was not error to submit the included offense to the jury. *State v. Gallagher, supra,* p. 449, and cases cited.

■ We find no merit in defendant's contention that an instruction (No. 11) given to the jury upon self-defense was erroneous. He complains particularly of the language explaining defendant's right to defend himself when there is no reasonable ground for belief that he is in imminent danger of death or great bodily harm, and it appears to him that an ordinary battery is all that is intended and all that he has reasonable grounds to fear from his assailant. This instruction was a correct statement of the law applicable to the evidence in this case. Defendant testified that his victim suddenly jumped at him with his arms extended toward him. There is no claim that his victim was armed, and the jury was told to determine the reasonableness of defendant's grounds for fear from his assailant, in the light of the prevailing circumstances.

■ Certain admissions made by the defendant were in evidence. They were included in a statement made by him to the deputy sheriffs, and also in his testimony in chief at

the trial. There was no claim that they were obtained by coercion or were other than voluntary. The court's instruction on the subject of admissions was in accordance with the evidence in this regard. It further stated, in substance, that their weight as evidence was for the jury to determine, and that, in weighing them, the jurors might consider the circumstances under which they were made. The instruction was a correct statement of the law, and it was proper for the court to give it in this case.

Defendant proposed certain instructions pertinent to his affirmative plea of self-defense. They pertained to issues which were not within the evidence or were covered adequately and fairly by the instructions given by the court. We find no error in the court's refusal to give these proposed instructions.

During the trial, the revolver with which the crime was committed was introduced in evidence. Attached to it was a "scotch-tape" bag containing five loaded cartridges. These cartridges were not admitted in evidence, and, during the trial, the court called this fact to the attention of the clerk who was in charge of the exhibits. Counsel for defendant and the deputy prosecuting attorney were present when this was done. The court, with the express agreement of both counsel, then instructed the clerk to separate the cartridges from the exhibits which were admitted in evidence, and stated that the cartridges were not to go to the jury room with the exhibits when the jury retired to deliberate upon its verdict. After the verdict was returned, it was discovered that, through inadvertence, the cartridges were sent to the jury room and remained with the jury during its deliberations. They had been separated from the revolver, but they were not segregated from the other exhibits.

Defendant contends that this is misconduct entitling him to a new trial. He places his reliance upon cases in which some misconduct of the jury itself occurred, such as improper separation or the receipt of improper communications by the jury. He argues that, when such misconduct is shown, a presumption of prejudice arises, and the burden is

upon the state to rebut this presumption and to show that the defendant was not prejudiced. See *State v. Amundsen*, 37 Wn. (2d) 356, 223 P. (2d) 1067 (1950); *State v. Smith*, 43 Wn. (2d) 307, 261 P. (2d) 109 (1953); *State v. Rose*, 43 Wn. (2d) 553, 262 P. (2d) 194 (1953), and cases cited.

But those cases are not in point here. All that is established in this case is that articles not admitted in evidence went to the jury room. This fact, of itself, is not sufficient to warrant a new trial. *State v. Wingard*, 160 Wash. 132, 136, 295 Pac. 116 (1931), and cases cited.

This was error, but it occurred through inadvertence and not through the design of either counsel. The articles were in the courtroom during the first two days of the trial, and, being attached to one of the principal exhibits, doubtless were within the plain view of the jury for a substantial length of time. It is not shown that the articles improperly influenced the jury. The trial court concluded that they did not. They were not included with the exhibits on appeal, and we have not seen them. From their description in the record, or from any reference to them during the trial, we cannot conclude that they necessarily were prejudicial to defendant in this case, or that this error was other than harmless.

Further, in view of the action of the trial court in calling the attention of both counsel to the fact that the cartridges were to be segregated from the other exhibits, each of them knew the situation and of the possibility that the clerk might neglect to retain them. Under these circumstances, we cannot say that counsel for the state had a greater duty in this regard than did counsel for the defendant. The responsibility for the inadvertent error rests upon them equally. Upon the record before us, defendant's contention that he did not have a fair trial is not sustained.

The judgment is affirmed.

GRADY, C. J., MALLERY, HAMLEY, and FINLEY, JJ., concur.

---

January 25. 1955. Petition for rehearing denied.