[No. 51838–6.   En Banc.   May 15, 1986.]

THE STATE OF WASHINGTON, *Petitioner*, v. CHARLES DEAN BINGHAM, *Respondent*.

*David H. Bruneau, Prosecuting Attorney,* for petitioner.

*Timothy K. Ford* and *Kathryn Ross,* for respondent.

GOODLOE, J.—In this case, we review the sufficiency of the evidence of the premeditation element in an aggravated first degree murder conviction. The Court of Appeals found the evidence insufficient and reversed and remanded for resentencing for second degree murder. *State v. Bingham,* 40 Wn. App. 553, 699 P.2d 262 (1985). We affirm the Court of Appeals decision.

On February 18, 1982, the raped and strangled body of Leslie Cook, a retarded adult, was found in a pasture in Sequim. Cook was last seen alive on February 15, 1982, with respondent Charles Dean Bingham. The Clallam County Prosecutor, by amended information, charged Bingham with aggravated first degree (premeditated) murder, rape being the aggravating circumstance. The prosecutor also notified Bingham that the State would seek the death penalty.

The evidence presented at trial showed that on February 15, Cook and Bingham got off a bus together in Sequim about 6 p.m. There was no evidence that they knew each other before this time. They visited a grocery store and two residences. Cook was last seen at the residence of Wayne Humphrey and Enid Pratt where Bingham asked for a ride back to Port Angeles. When he was told no, Bingham said they would hitchhike. They left together heading toward the infrequently traveled Old Olympic Highway. None of the witnesses who saw the two heard any argument or observed any physical contact between them. Three days later, Cook's body was found in a field about a quarter mile from the Humphrey–Pratt residence.

At trial, King County Medical Examiner Reay described

the results of the autopsy he performed on Cook's body. The cause of death was "asphyxiation through manual strangulation", accomplished by applying continuous pressure to the windpipe for approximately 3 to 5 minutes. Report of Proceedings (10/18/82), at 14. Cook had a bruise on her upper lip, more likely caused by a hand being pressed over her mouth than by a violent blow. Tears were found in Cook's vaginal wall and anal ring. Spermatozoa were present. These injuries were inflicted antemortem. Also, there was a bite mark on each of Cook's breasts. Reay testified that these occurred perimortem or postmortem.

Two forensic odontologists testified that the bite mark on one breast matched Bingham's teeth. No conclusive determination could be made with respect to the other bite mark.

The prosecutor's theory, as revealed in both his opening statement and closing argument, was that Bingham wanted to have sex with Cook and that he had to kill her in order to do so. The prosecutor hypothesized that Bingham had started the act while Cook was alive, and that he put his hand over her mouth and then strangled her in order to complete the act. The prosecutor also told the jury that the murder would be premeditated if Bingham had formed the intent to kill when he began to strangle Cook, and thought about that intent for the 3 to 5 minutes it took her to die.

The court instructed the jury on aggravated first degree murder and on the lesser included offenses of first and second degree murder and first degree manslaughter. The court also gave Bingham's proposed instruction on voluntary intoxication.

The jury found Bingham guilty of aggravated first degree murder. The jury also found, in the penalty phase, that the State had failed to prove that there were insufficient mitigating circumstances to warrant leniency. The trial court therefore sentenced Bingham to life imprisonment without the possibility of release or parole.

Bingham sought direct review by this court. We transferred the case to Division Two of the Court of Appeals.

The Court of Appeals reversed Bingham's conviction in a split decision and remanded for resentencing for second degree murder. *State v. Bingham, supra.* The State sought and was granted discretionary review.

We must determine whether evidence of premeditation was sufficiently demonstrated in order for the issue to go to the jury and in order to sustain a finding of premeditated killing.

The constitutional standard for reviewing the sufficiency of the evidence in a criminal case is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). The element challenged in this case is "premeditated intent".

Bingham was charged with first degree murder pursuant to RCW 9A.32.030(1)(a), which requires for conviction "a premeditated intent to cause the death of another". The element of premeditation distinguishes first and second degree murder. *State v. Brooks,* 97 Wn.2d 873, 651 P.2d 217 (1982). Section (1)(a) of the second degree murder statute, RCW 9A.32.050, requires for conviction "intent to cause the death of another person but without premeditation".

The only statutory elaboration on the meaning of premeditation is found in RCW 9A.32.020(1), which states that premeditation "must involve more than a moment in point of time." Washington case law further defines premeditation as "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." (Footnote omitted.) *Brooks,* at 876. We recently approved an instruction which defined premeditation as "the deliberate formation of and reflection upon the intent to take a human life." *State v. Robtoy,* 98 Wn.2d 30, 43, 653 P.2d 284 (1982).

Premeditation may be shown by direct or circumstantial

evidence. Circumstantial evidence can˙be used where the inferences drawn by the jury are reasonable and the evidence supporting the jury's verdict is substantial. *State v. Luoma,* 88 Wn.2d 28, 558 P.2d 756 (1977). In this case, the State presented no direct evidence. The issue thus becomes whether sufficient circumstantial evidence of premeditation was presented. Bingham was not charged with felony murder.

To show premeditation, the State relied on the pathologist's testimony that manual strangulation takes 3 to 5 minutes. The State argues this time is an appreciable amount of time in which Bingham could have deliberated. Bingham argues that time alone is not enough and that other indicators of premeditation must be shown.

One case, *State v. Smith,* 12 Wn. App. 720, 531 P.2d 843 (1975), *aff'd,* 88 Wn.2d 127, 559 P.2d 970, *cert. denied,* 434 U.S. 876 (1977), was relied heavily upon by the parties, the trial court and the Court of Appeals. In *Smith,* the defendant was convicted of the premeditated first degree murder of his son. The facts showed that the defendant took his son for a midnight walk by a creek near his house. The next morning he returned home alone and disoriented. The boy's body was found in the river. He had been drowned.

The *entire Smith* discussion on premeditation is as follows:

> *Premeditation.* Although no definite motive was proven, the jury was presented with substantial evidence of the existence of premeditation. The Smiths had discussed separation, though at the time of the incident had decided not to do so. They had concluded, however, that if they separated, Kathy Smith would receive custody of the children. For premeditation to be inferable by the jury, there must have been a period of time during which the intent to kill *is deliberated.* This time may be very short provided it is an "appreciable period of time." *State v. Shirley,* 60 Wn.2d 277, 279, 373 P.2d 777 (1962); *State v. Ross,* 56 Wn.2d 344, 351, 353 P.2d 885 (1960); *State v. Tikka,* 8 Wn. App. 736, 740, 509 P.2d 101 (1973). Looking at the circumstances surrounding the child's death, it is clear that an appreciable period of time did

elapse. As recognized by our State Supreme Court, choking takes an appreciable time. *State v. Harris,* 62 Wn.2d 858, 385 P.2d 18 (1963); *State v. Gaines,* 144 Wash. 446, 258 P. 508 (1927), *cert. denied,* 277 U.S. 81, 72 L. Ed. 793, 48 S. Ct. 468 (1928).

(Italics ours.) *Smith,* at 732–33.

The Court of Appeals majority overruled *Smith* to the extent that it held premeditation can be shown by only evidence of choking because choking takes an appreciable amount of time. The *Smith* facts could also be found to reflect a deliberated decision to kill the child by holding the child's head under water.

A review of the two cases cited in *Smith* for the proposition that choking takes an appreciable amount of time also shows that more than choking was involved in those cases. In both *State v. Harris,* 62 Wn.2d 858, 385 P.2d 18 (1963) and *State v. Gaines,* 144 Wash. 446, 258 P. 508 (1927), *cert. denied,* 277 U.S. 81, 72 L. Ed. 793, 48 S. Ct. 468 (1928), the facts show that the injuries were inflicted by various means over some period of time. In *Harris,* the victim

> had been struck on the head several times with a blunt instrument with such force that in one place her skull had been fractured into her brain. Also, additional blows had severely damaged one ear and cheek and fractured her jaw, breaking two teeth. *After* this terrific beating, her assailant, while she was still alive, tied the vacuum cleaner cord around her neck and strangled her, which was the immediate cause of her death . . .

(Italics ours.) *Harris,* at 868. In *Gaines,*

> the deceased was first choked into insensibility to an extent which could have produced death. A choking, to have this effect, takes some appreciable time. *After* the deceased was choked into insensibility, her assailant went to a garbage dump nearby, got a rock, returned and inflicted the wounds upon the head. It cannot be held, under the facts and circumstances of this case, that there was no evidence from which the jury had a right to find deliberation or premeditation.

(Italics ours.) *Gaines,* at 467.

We find all of these cases, while helpful in under-

standing the premeditation element, are not determinative of whether manual strangulation alone is sufficient. We agree with the Court of Appeals majority that to allow a finding of premeditation only because the act takes an appreciable amount of time obliterates the distinction between first and second degree murder. Having the opportunity to deliberate is not evidence the defendant did deliberate, which is necessary for a finding of premeditation. Otherwise, any form of killing which took more than a moment could result in a finding of premeditation, without some additional evidence showing reflection. Holding a hand over someone's mouth or windpipe does not necessarily reflect a decision to kill the person, but possibly only to quiet her or him. Furthermore, here a question of the ability to deliberate or reflect while engaged in sexual activity exists.

The position of the State and the Court of Appeals dissent appears to be that, if the defendant has the opportunity to deliberate and chooses not to cease his actions, then it is proper to allow the jury to infer deliberation. They offer three cases for the proposition that premeditation may properly be inferred from evidence of the lapse of time to death. *State v. Harris, supra; State v. Griffith,* 91 Wn.2d 572, 589 P.2d 799 (1979); *State v. Luoma, supra.* While *Harris, Griffith,* and *Luoma* do use language regarding reliance on circumstances of the crime to show premeditation, the circumstances showed more action or thought than mere infliction of the fatal act.

In *Harris,* the assailant, *after* inflicting a terrific head beating, tied a vacuum cleaner cord around the victim's neck and strangled her. *Harris,* at 868. The interim time period between the beating and the strangulation, as well as the presence and use of a vacuum cleaner cord in effectuating the victim's death distinguish this case from the manual strangulation situation with which we are presented.

In *Griffith,* some children were hitting a basketball against the house where defendant lived with his mother. The defendant took the ball from the children. He went to

his car, got a gun, and placed it on a table next to the front door. Within 5 minutes, two adults went to the house to retrieve the ball. The defendant, while talking to the adults at the front door, reached for the gun, pointed it at the adults, and shot one of them. The court said:

> Although the period of time in which these events transpired was approximately 5 minutes, there was sufficient evidence from which the jury could have found that the defendant formulated an intent and deliberated upon it prior to the shooting.

*Griffith,* at 577. The planned presence of a weapon necessary to facilitate a killing has been held to be adequate evidence to allow the issue of premeditation to go to the jury. *State v. Tikka,* 8 Wn. App. 736, 509 P.2d 101 (1973).

In *Luoma,* the defendant transported the victim to the crime scene, took her down a bank, positioned her and then crushed her head with a large rock. From the facts in *Luoma,* "[t]he jury could properly conclude that the death was not the result of an impulsive, spontaneous act." *Luoma,* at 34. We note that the language in *Luoma* focuses on intent, not premeditation. As is clear from the statutory requirements and *State v. Brooks,* 97 Wn.2d 873, 651 P.2d 217 (1982), premeditation is a separate and additional element to the intent requirement for first degree murder.

Here, *no* evidence was presented of deliberation or reflection before or during the strangulation, only the strangulation. The opportunity to deliberate is not sufficient.

As was recognized in *Austin v. United States,* 382 F.2d 129, 138–39 (D.C. Cir. 1967):

> The facts of a savage murder generate a powerful drive, almost a juggernaut for jurors, and indeed for judges, to crush the crime with the utmost condemnation available, to seize whatever words or terms reflect maximum denunciation, to cry out murder "in the first degree." But it is the task and conscience of a judge to transcend emotional momentum with reflective analysis. The judge is aware that many murders most brutish and bestial are committed in a consuming frenzy or heat of

passion, and that these are in law only murder in the second degree. The [State's] evidence suffice[s] to establish an intentional and horrible murder—the kind that could be committed in a frenzy or heat of passion. However the core responsibility of the court requires it to reflect on the sufficiency of the [State's] case.

Exercising our responsibility, we find manual strangulation alone is insufficient evidence to support a finding of premeditation. We affirm the Court of Appeals decision.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, and PEARSON, JJ., concur.

CALLOW, J. (dissenting)—I would reinstate the aggravated first degree murder conviction of defendant. Sufficient evidence was presented on premeditation for that issue to be submitted to the jury. The decision on that issue is the function of the jury; not to be taken away.

The standard for reviewing the sufficiency of evidence in a criminal case is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." Majority opinion, at 823 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). The evidence is to be viewed in the light most favorable to the State. *Green,* at 221. The issue of premeditation should only have been taken from the jury if there was no evidence or reasonable inferences therefrom which would sustain the jury's conclusion that the defendant acted with premeditation.

*State v. Griffith,* 91 Wn.2d 572, 574–75, 589 P.2d 799 (1979) stated:

A defendant is entitled to have his theory of the case submitted to the jury under appropriate instructions when the theory is supported by substantial evidence in the record. If any one of the theories argued by defendant was supported by substantial evidence, it should have been submitted to the jury.

(Citations omitted.) The same should hold true for the State's theory. Instruction 8 on premeditation given by the trial court is as follows:

> Premeditated means thought over beforehand and describes the mental operation of thinking upon an act before doing it. Premeditation necessarily implies that some time exist between the thought process and commission of the act itself. By this is meant that premeditation cannot occur simultaneously with the act but must precede the act. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed.

Clerk's Papers, at 175. This instruction, in part, reflects current statutory and case law. *See* RCW 9A.32.020(1); *State v. Brooks,* 97 Wn.2d 873, 876, 651 P.2d 217 (1982); *State v. Tikka,* 8 Wn. App. 736, 740, 509 P.2d 101 (1973); *see also* WPIC 26.01 (1977).[1] "A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime." WPIC 10.01 (1977). To cause a death with premeditated intent constitutes murder in the first degree. RCW 9A.32.030.

The element of premeditation distinguishes first and second degree murder. *Brooks,* at 876. When a killing is

---

[1] WPIC 26.01, defining premeditation, reads:

> A person commits the crime of murder in the first degree when, with a premeditated intent to cause the death of another person, he or she causes the death of such person . . .

> Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed.

In instruction 8 the trial court added several sentences to the Washington Pattern Jury Instruction. The trial court's instruction went *beyond* the statement of the law as set forth in WPIC and imposed a heavier burden on the State than required. *State v. Shirley,* 60 Wn.2d 277, 373 P.2d 777 (1962); *State v. Tikka,* 8 Wn. App. 736, 509 P.2d 101 (1973).

admitted by a defendant this leads to a presumption of murder in the second degree. *State v. Sill,* 47 Wn.2d 647, 650, 289 P.2d 720 (1955); *State v. Scheeler,* 45 Wn.2d 661, 663, 277 P.2d 341 (1954). The burden is on the State to prove the requisite elements of first degree beyond a reasonable doubt.

The majority states "*no* evidence was presented of deliberation or reflection before or during the strangulation, only the strangulation. The opportunity to deliberate is not sufficient." Majority opinion, at 827. "[W]e find manual strangulation alone is insufficient evidence to support a finding of premeditation." Majority opinion, at 828. These statements ignore numerous items of evidence which corroborate the presence of premeditation. I believe a review of the record compels the conclusion that there was sufficient evidence for the jury to conclude that the defendant acted with premeditation. The evidence meets the required standard since it could lead a rational trier of fact to find the essential elements of first degree murder beyond a reasonable doubt. The rule announced by the majority seems to be that premeditation must take place *before the commencement* of the act that results in death. Take the farmer's son who begins to fill the bin with wheat as a joke on his brother sleeping at its bottom. Then, realizing that he will inherit the whole farm if he persists, he does so and causes his brother's death. He had time to premeditate and did so in the middle of the act. He has committed aggravated first degree murder. That a murderer originally commenced an act without intending death does not grant him a carte blanche to persist when he realizes that to do so will kill his victim.

The Washington cases concerning premeditation include *State v. Smith,* 12 Wn. App. 720, 531 P.2d 843 (1975), *aff'd,* 88 Wn.2d 127, 559 P.2d 970, *cert. denied,* 434 U.S. 876 (1977); *State v. Harris,* 62 Wn.2d 858, 385 P.2d 18 (1963); and *State v. Gaines,* 144 Wash. 446, 258 P. 508, *cert. denied,* 277 U.S. 81 (1928); *see also State v. Tikka, supra.* In *Smith* the defendant was found guilty of the first degree

murder of his young son. A finding of premeditation was justified because of the circumstances surrounding the young boy's death by drowning. The Court of Appeals opinion stated at page 732 as follows:

For premeditation to be inferable by the jury, there must have been a period of time during which the intent to kill is deliberated. This time may be very short provided it is an "appreciable period of time." Looking at the circumstances surrounding the child's death, it is clear that an appreciable period of time did elapse. As recognized by our State Supreme Court, choking takes an appreciable time.

(Citations omitted.)

The majority argues that "[t]he *Smith* facts could also be found to reflect a deliberated decision to kill the child by holding the child's head under water." Majority opinion, at 825. Likewise, the facts in this case could be found to reflect a deliberated decision to kill Leslie Cook by applying between 3 and 5 minutes of continuous and steady pressure to her neck. The act of strangulation inflicted by the defendant upon the deceased is considerably more than just the "[h]olding [of] a hand over someone's mouth or windpipe . . ." See majority opinion, at 826. The testimony of Dr. Donald Reay, Chief Medical Examiner for King County, who performed the autopsy on Leslie Cook, is illuminating as to what is necessary to effect death by manual strangulation.

Q Doctor, based upon your examination of the deceased, did you come to an opinion as to her cause of death?
A Yes, I did.
Q And what is that opinion?
A I attributed death to manual strangulation, with injuries to the neck and evidence of spaces of blood and death attributed to asphyxiation through manual strangulation.
Q Doctor, when you say manual strangulation, you mean the hands?
A Yes, correct.
Q Okay, now how long does it take someone to die by manual strangulation, doctor?

A  Ordinarily the process will take three to five minutes.

Q  And what sort of force or what sort of action is required during that three to five minutes period?

A  The requirement is to stop the blood flow to the brain and at the same time prevent a person from breathing. The result is that they become oxygen deficient and the heart is sensitive over a period of time and leads to lack of oxygen that develops an abnormal rhythm which proceeds to death.

Q  Doctor, does unconsciousness come before death in a case of manual strangulation?

A  Oh, yes. Yes.

Q  And how long does it take before someone is unconscious, do you know?

A  If a well placed hold about the neck, it can take a matter of seconds. We have done some tests where a person becomes unconscious in a matter of six to seven seconds, if the vessels are pinched in a very quick fashion.

Q  And death ensues within three to five minutes?

A  Yes, that may be unconsciousness, but if the pressure is released the person will wake up. It's a hold that some times is used by law enforcement, but if the pressure is sustained then the brain goes without oxygen and in addition the airways collapse over the lungs and heart go without oxygen and there are deficits building up which affect the heart and it starts to develop abnormal beats or rhythms and eventually leads to death.

Q  Doctor, does this sort of asphyxiation by manual strangulation in this instance, does it take a steady pressure for that three to five minute period?

A  Yes, the pressure can vary, certainly, but the important thing is to include the airway and the arterial supply. One or the other will effectively do it.

Q  Doctor, how is it that the hyoid bone becomes fractured?

A  The hyoid bone is a "U" shaped, almost a wishbone type of structure in the neck. It's the open part of the "U" is facing rearward and as the front of the neck is squeezed that is caught, pinched, and eventually the wing of it cracks.

Q  Does that fracture of the hyoid have any ramifications with regard to the windpipe?

A It is part of the structures in the neck. Its real value is because it does represent, or does demonstrate that pressure was applied to the neck. It is in the immediate area of the windpipe and certainly when that is broken that is pretty good evidence that the airway was collapsed.

Q For a three to five minute period?

A Yes. In addition to the airway itself there is also the tongue, which is pushed backwards, rearwards. When that happens the tongue goes back up against the roof of the mouth, in the process of forcing it upwards and that adds to it, so there is the occlusion in addition to the squeezing, there is also the pressure upwards, which occludes it.

Report of Proceedings, at 14–16 (Oct. 18, 1982).

The other cases cited by the majority, *State v. Harris, supra,* and *State v. Gaines, supra,* both involve a beating and a choking. This court said:

It is true that proof of the fact of killing, alone, does not raise a presumption of premeditation or deliberation, but *premeditation or deliberation may be inferred from the circumstances of the killing.*

(Italics mine.) *Harris,* at 868 (quoting *Gaines,* at 467).

Here it can be inferred that the defendant thought about the consequences as he choked his victim. The period of premeditation might not have been during the initial squeeze, but the evidence of premeditation certainly was present in the continued application of force, knowing it would bring about death.

The evidence needed to prove premeditation is likely to be circumstantial and such evidence suffices

where . . . the inferences drawn by the jury are reasonable and the evidence supporting the jury's findings is substantial. Although there was no direct proof of intent, premeditation may still be found where intent is logically inferred from the facts of the crime.

*State v. Luoma,* 88 Wn.2d 28, 33, 558 P.2d 756 (1977). A review of the pertinent circumstances surrounding Leslie Cook's death is required. The evidence indicates that the defendant and the deceased did not know each other prior

to the day of the killing. They met on the bus to Sequim. Later that day the deceased wished to return to Port Angeles. The defendant took the deceased toward the infrequently traveled Old Olympic Highway purportedly to hitchhike to Port Angeles. The defendant took the deceased to a secluded location where he raped her. He then used his bare hands to strangle her. It took between 3 to 5 minutes to effect death. After the killing he bit the breasts of the deceased. He left the body in the secluded location exposed to the winter elements. There is no evidence of passion, provocation or struggle reflected in the record. Indeed, there is more here than the mere opportunity to deliberate. There is adequate evidence for the jury to find that he did form a design to kill.

We turn to the decisions of other jurisdictions. In *Hounshell v. State,* 61 Md. App. 364, 372, 486 A.2d 789, *cert. denied,* 303 Md. 42, 491 A.2d 1197 (1985), the court stated:

> [D]eath by strangulation does not in and of itself establish first degree murder. . . . *Whether the time required to produce death by strangulation is sufficient for the assailant to reflect upon his actions before death ensues is a matter for the jury to determine.*

(Italics mine.) In *Hounshell,* the facts were similar to the case at bar. The evidence indicated that defendant had been with the deceased on the night of her death, that the deceased had died from manual strangulation, and that the deceased had semen in her mouth. The jury found the defendant guilty of first degree premeditated murder. On appeal the conviction was affirmed.

> Logic and common sense dictate that for one person to strangle another person to death, a significant length of time must pass for the victim to die. This time period in which the perpetrator must continuously exert sufficient force on the victim's throat to block the victim's breathing affords the perpetrator a significant opportunity for reflection and a change of heart.
>
> . . .
>
> . . . The court specifically stated that strangulation in and of itself does not constitute first degree murder and

that the manner of killing was only one circumstance for the jury to consider in reaching its verdict. . . .

. . . [I]n the present case, the jury could have determined beyond a reasonable doubt that appellant made a premeditated decision to commit murder within the interval of time it took him to initiate and then ultimately complete the act of strangulation.

*Hounshell,* at 375, 377–78.

In *Houck v. State,* 563 P.2d 665, 668 (Okla. Crim. App. 1977), the deceased was found with a pillowcase wrapped tightly around his neck. The court found the fact that the strangulation took several minutes to cause the death of the victim, according to a forensic pathologist, was sufficient to raise an inference of premeditation. While *Houck* is not a first degree murder case, it is relevant in that premeditation is a necessary element of second degree murder in Oklahoma. The court in *Freeman v. State,* 240 Ark. 915, 403 S.W.2d 61 (1966) found the defendant guilty of first degree murder in the strangulation of the deceased. During the strangulation the defendant used a venetian blind cord rather than his hands. The State presented no direct evidence as to premeditation. The court held that deliberation, premeditation and intent may be inferred from the circumstances which portray a cruel and brutal strangulation. The Missouri Supreme Court affirmed the first degree murder conviction of the defendant in *State v. Sturdivan,* 497 S.W.2d 139 (Mo. 1973). The court stated at page 142:

Premeditation may be reasonably inferred from the bare hand strangulation of defendant's victim and the subsequent application of the towel for two or three minutes longer to make sure he was dead. There was no evidence of passion or provocation, . . . disturbances, or struggle. . . . With evidence of provocation lacking, the previously demonstrated intent to kill [as shown by the act of manual strangulation followed by the act of wrapping the towel around the victim's neck] provided deliberation; . . .

Regarding the type of circumstantial evidence that is relevant to the issue of premeditation, the court in *People v. Irby,* 129 Mich. App. 306, 323, 342 N.W.2d 303 (1983),

*leave to appeal denied,* 418 Mich. 951 (1984) listed the following nonexclusive factors pertinent to establish premeditation: (1) A prior relationship showing motive; or (2) a murder weapon acquired and positioned as an indication of preparation; or (3) evidence which supports an inference the killer transported the victim to a secluded location for an illicit or criminal purpose; or (4) circumstances suggesting premeditation and deliberation; or (5) subsequent organized conduct which suggests the existence of a plan. The facts in *Irby* indicate the 15–year–old defendant and the deceased entered into consensual sexual relations. Following the sexual activity something "came over him" and he strangled the victim to death with his bare hands. Thereafter, he moved the deceased, cleaned up the body and placed it in a garbage can. He later made the statement that some boys in a car dropped the body off at his house for disposal. The court upheld defendant's first degree premeditated murder conviction.

> We agree with defendant that the trial court erred in holding that the element of premeditation was prima facie shown by evidence of manual strangulation alone. . . . Nevertheless, . . . [t]he evidence of manual strangulation *and* defendant's subsequent actions after the victim's death do support a prima facie case of first–degree premeditated murder . . .

*Irby,* at 323. *State v. Faust,* 254 N.C. 101, 107, 118 S.E.2d 769, 96 A.L.R.2d 1422, *cert. denied,* 368 U.S. 851 (1961) states:

> Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: Want of provocation on the part of deceased. The conduct of defendant before and after the killing.

(Citations omitted.) In the case at hand the evidence is that the defendant left his victim lying exposed in the field in Clallam County in winter and the evidence also supports the inference that the defendant transported his victim to this secluded spot for an illicit or criminal purpose.

The circumstances of Leslie Cook's death are replete

with evidence besides the manual strangulation which raise the inference the defendant did premeditate: (1) the defendant took the deceased to a secluded location; (2) the defendant raped the deceased; (3) the time that is necessary to cause death by strangulation; (4) the defendant had plenty of opportunity to desist after the deceased lapsed into unconsciousness, but nevertheless, he chose to continue to strangle Leslie Cook to death; (5) there is no evidence of provocation; (6) the defendant is a large man and there is little sign of struggle; and (7) the defendant bit the breasts of the deceased and left the near–naked body exposed to the winter elements. The jury heard the testimony of Dr. Reay that it takes 3 to 5 minutes to effect death by manual strangulation. Continuous and steady pressure on the victim's neck is required. The amount of pressure required is sufficiently greater than the amount required to keep someone from crying out. The strangulation of Leslie Cook was cruel and brutal. The jury would be justified in concluding from the circumstances of this case that the death was not the result of an impulsive or spontaneous act flowing from an attempt to overcome resistance or to effect sexual contact and that the defendant chose to kill in order to silence his victim and conceal a rape.

Judge Alexander's dissenting opinion in *State v. Bingham,* 40 Wn. App. 553, 699 P.2d 262 (1985) states the proposition well as follows:

The majority seems to suggest that for a jury to find premeditation or deliberation it must have preceded the formation of intent to kill. In other words, it seems to hold, if the intent to kill is formed impulsively there can be no premeditation. Neither logic nor case law leads me to concur with that conclusion. The fact of deliberation for the requisite time is the key ingredient of premeditation. . . . Common sense suggests that premeditation exists as much if one is reflecting on an already formed intent to kill as it does when one is deliberating whether or not to kill. In either case, reflection and deliberation are present, if the deliberation is for an appreciable time. If the killing follows this process of reflection, then it is a

premeditated killing.

. . .

. . . The time period during which one continuously exerts sufficient pressure on a victim's throat to block breathing which, in turn, causes unconsciousness and then death, affords a person a significant opportunity for a change of heart. If a person consciously rejects the opportunity to lessen the pressure in that period, the person may be found to have deliberated. The more time required, the greater the probability that even a slow thinker had time to reflect.

. . . [W]hat a person does is often the best gauge of his or her thinking. The fact finder is called upon to determine whether a defendant premeditated from the facts surrounding the killing. Here, the jury concluded, as well they might, that this defendant took this mentally retarded young woman to a secluded area of Clallam County, raped her, strangled her with little difficulty for 3 to 5 minutes until she was dead, and then proceeded to bite her dead body. From this evidence a rational trier of fact could conclude beyond a reasonable doubt that the defendant was capable of reflecting and did reflect on his deed sufficiently to cause him to be guilty of premeditated murder in the first degree.

*Bingham,* at 562–66.

Premeditation cannot automatically be inferred from elapsed time. Even so, the jury should be permitted to examine the evidence to glean what it can about intent and premeditation. I find the evidence of elapsed time, of the crime scene and other pertinent circumstances compel the conclusion the defendant had ample opportunity to premeditate. Further, the defendant caused Leslie Cook's death by strangulation. What one does is highly indicative of what one intended to do. The jury should not be precluded from considering the method of killing if its very nature provides clues to the mental process of the perpetrator.

If one sits quietly and watches the clock for 3 to 5 minutes, an appreciation of the fullness of that length of time pervades one's thoughts. The jury was entitled to put itself in the shoes of the victim and the murderer. The victim

would have gone from apprehension to fear, terror, and then lapsed into unconsciousness. During this time the victim, in all likelihood, would have struggled and the defendant would have watched all of this in the eyes of his victim. As to the defendant, the continued, deliberate exertion of strength required for that length of time was substantial. By the fact of death, we know that not once during all that it took to effect death did he desist from accomplishing his purpose.

For the element of premeditation in an aggravated first degree murder case to be decided by the jury, there must be (a) proper instructions given defining premeditation and (b) sufficient evidence to support the giving of the instruction and to survive a challenge. The majority finds no fault with the instructions. The sole issue is whether there is evidence that the defendant thought about his act and intended to kill his victim. I find such evidence present and the conclusion as to whether the defendant did, in fact, deliberate and form an intent to take the life of his victim, a matter for the jury, not this court.

The State presented substantial circumstantial evidence on the issue of premeditation. The trial court properly left that issue to the jury. The jury found that the defendant did premeditate. I would reinstate the first degree murder conviction of the defendant.

DORE, ANDERSEN, and DURHAM, JJ., concur with CALLOW, J.

Reconsideration denied July 3, 1986.