[No. 7389–1–III.   Division Three.   March 3, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL EUGENE GIBSON, *Appellant.*

*Michael Eugene Gibson,* pro se, and *Frank W. Jenny,* for appellant (appointed counsel for appeal).

*Curtis L. Ludwig, Prosecuting Attorney,* and *Andrew K. Miller* and *Katharine Butler, Deputies,* for respondent.

GREEN, J.—Michael Eugene Gibson appeals his conviction of premeditated first degree murder. He contends there was (1) insufficient probable cause to support the issuance of a search warrant and the evidence obtained thereby should have been suppressed; and (2) insufficient evidence of premeditation to support the conviction of murder in the first degree. We affirm.

On January 25, 1985, the body of Donna Armatis was found in the backseat of her car. An autopsy revealed she had received three blunt force injuries to her head and died of ligature strangulation.

First, Mr. Gibson contends the court erred in denying his motion to suppress evidence seized pursuant to a search warrant. He asserts the affidavit supporting the issuance of the warrant was based on conjecture, had no basis in fact, contained misleading information and was, therefore, erroneously issued. We do not so find.

To justify the issuance of a search warrant, the affidavit must contain the "underlying facts and circumstances to establish probable cause." *State v. Anderson,* 37 Wn. App. 157, 160, 678 P.2d 1310 (1984). "[P]robable cause requires the existence of reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant a man of ordinary caution to believe the accused is guilty of the indicated crime." *State v. Seagull,* 95 Wn.2d 898, 906, 632 P.2d 44 (1981). The duty of a reviewing court is simply to insure there was a substantial basis for concluding that probable cause existed. As stated in *State v. Sweet,* 23 Wn.

App. 97, 100, 596 P.2d 1080 (1979) (quoting *Franks v. Delaware,* 438 U.S. 154, 171, 57 L. Ed. 2d 667, 98 S. Ct. 2674, 2685 (1978)):

> There is . . . a presumption of validity with respect to the affidavit supporting the search warrant. . . . [T]he challenger's attack must be more than conclusory and . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth . . .

Here, we have reviewed the comprehensive and detailed affidavit and find ample probable cause for the issuance of the search warrant. There was no error.

Second, Mr. Gibson claims the evidence was insufficient to establish the element of premeditation. Therefore, he argues, the trial court erred in accepting the jury's first degree murder verdict. We disagree.

■ Premeditation is "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short", *State v. Brooks,* 97 Wn.2d 873, 876, 651 P.2d 217 (1982); "the deliberate formation of and reflection upon the intent to take a human life", *State v. Robtoy,* 98 Wn.2d 30, 43, 653 P.2d 284 (1982). Premeditation may be shown by direct or circumstantial evidence. *State v. Luoma,* 88 Wn.2d 28, 33, 558 P.2d 756 (1977). Circumstantial evidence is proper where the inferences drawn by the jury are reasonable and the evidence supporting the verdict is substantial. *State v. Luoma, supra* at 33.

Mr. Gibson relies on the recent Supreme Court decision of *State v. Bingham,* 105 Wn.2d 820, 719 P.2d 109 (1986) to support his position that the evidence was insufficient to establish premeditation. In *Bingham,* the cause of the victim's death was manual strangulation accomplished by applying 3 to 5 minutes of continuous pressure to the victim's windpipe. The court in that decision determined that no evidence of deliberation or reflection was presented; the mere opportunity to deliberate was not sufficient. *Bingham,* at 827. Mr. Gibson argues that since Ms. Armatis' death was likewise caused by strangulation requiring 3 to 5 min-

utes, this court must reach a similar result.

Mr. Gibson's reliance on *Bingham* is misplaced; we find *State v. Harris,* 62 Wn.2d 858, 385 P.2d 18 (1963) controlling. In *Harris,* although the victim received compound skull fractures, the immediate cause of death was strangulation. In affirming the first degree murder conviction, the court held that the jury properly found that an appreciable period of time had elapsed between the beating's first blow and the strangulation of the victim with a vacuum cleaner cord. This time lapse permitted the perpetrator to form an intent to kill his victim. Thus, premeditation was established.

Medical testimony established Ms. Armatis suffered three separate blunt force injuries to the skull, possibly from a two–by–four or thin, heavy pipe. She was subsequently strangled to death by a long, thin rope or cord–like object. This attack is similar to the beating and strangulation death of the victim in *Harris,* and distinguishable from *Bingham,* where there was no evidence of any blows being administered before the victim was strangled. In *Bingham,* the Supreme Court distinguished *Harris* and stated:

> [T]he circumstances [in *Harris*] showed more action or thought than mere infliction of the fatal act.
>
> . . . The interim time period between the beating and the strangulation, as well as the presence and use of a vacuum cleaner cord in effectuating the victim's death distinguish [*Harris*] from the manual strangulation situation with which we are presented.

*Bingham,* at 826.

Thus, viewing the evidence here in a light most favorable to the State, there was a sufficient lapse of time between the beating and strangulation which would permit a jury to find the element of premeditation beyond a reasonable doubt. *Bingham,* at 823.

Mr. Gibson has filed a pro se brief in which he claims that he had ineffective representation during the trial and as a consequence this court should reverse and remand for retrial. Mr. Gibson's contention arises out of the following

facts. The State called Guy Brown, a neighbor of the deceased, Donna Armatis, to establish that her car was by her trailer home at "10 o'clock or 10:30" the night before her demise. Prior to giving such testimony, Mr. Ziegler, one of Mr. Gibson's cocounsel, approached the bench to inform the court that Mr. Brown "retained me to represent him during the first part of this murder investigation when he was a suspect. Theoretically, we still have a lawyer–client relationship." The prosecutor then told the court:

> The police, in the course of their homicide investigation interviewed a number of people. I'm not sure if Guy Brown was a suspect in the classic sense of the word. He is a neighbor of—or, was a neighbor of Donna Armatis. He was also active in the Jehovah's Witness church.
>
> He also was a neighbor in a homicide in 1979—the Vickie Bridges case in Richland, Washington. When the police questioned Guy Brown, they asked him to take a polygraph just as to details about when he saw Donna Armatis, and he indicated that he wanted to talk to an attorney. There was never any other evidence to believe that he was connected to the homicide, other than the fact they gave the polygraph to a number of people that knew something at all about the investigation. He had never been arrested, never any probable cause to arrest or anything like that.
>
> THE COURT: What's he here to testify about?
>
> MR. MILLER: He saw Donna Armatis's car by her trailer at 10:00 or 10:35.
>
> THE COURT: All right.

The trial then proceeded. Mr. Gibson's pro se brief claims that because Mr. Ziegler had been consulted by Mr. Brown, Mr. Ziegler occupied a conflicting position and hence could not effectively represent Mr. Gibson at trial. Mr. Gibson also contends that Mr. Brown was a key prosecution witness that was not adequately cross–examined. Based upon the facts presented here, we disagree.

The State elicited from both Mr. and Mrs. Brown the fact that Donna Armatis's car was beside her trailer home the night before her demise. Sometime shortly after 6 a.m. the next morning, Mr. Brown testified he heard a car start

and leave from the area beside the Armatis trailer. Neither Mr. or Mrs. Brown looked out of their trailer home to observe the car or the driver. The Browns' testimony was not "key" to the State's case against Mr. Gibson. In fact, it was the testimony of many other prosecution witnesses that established Mr. Gibson's connection to the murder. Mr. Gibson's neighbor testified that between 7 and 8 a.m. on the morning of the murder, he saw Mr. Gibson drive by in a car he had never seen before. When he later saw television news stories about the discovery of the victim's body, he realized the car the body was found in was the same car he had seen Mr. Gibson driving that morning. Another witness identified Mr. Gibson as a person jogging at about 11:15 a.m. in the immediate area and at the approximate time the car containing the victim's body was abandoned. Shortly thereafter a bus driver stated Mr. Gibson got on his bus in the same general area. The victim's blood samples matched blood samples found on the carpet of Mr. Gibson's home. Cat hairs found on the victim were similar to those found on a throw rug in the Gibson home. The Gibsons had three cats; the victim had none. Soil taken from the victim's skirt matched soil found in Mr. Gibson's garage. Metal filings were found in the soil that matched filings in the soil from the garage. The soil did not match samples taken from the victim's home. Head and pubic hair found on the victim matched samples taken from Mr. Gibson. Carpet fibers taken from the Gibsons' throw rug matched carpet fibers that adhered to the bottom of the victim's right boot by what appeared to be blood. There was also additional evidence connecting Mr. Gibson to the victim. In light of all this evidence, it is apparent that both Mr. Ziegler's consultation with Mr. Brown and Mr. Brown's testimony at trial were remote and immaterial to Mr. Gibson's defense. Claims by Mr. Gibson that his counsel should have called him as a witness or called certain other persons as witnesses lie in the area of defensive strategy. Our review of the entire record reveals that Mr. Gibson was effectively represented at his trial and thus the contentions made in his pro

se brief must be rejected.

Affirmed.

THOMPSON, A.C.J., and MUNSON, J., concur.

After modification, further reconsideration denied March 25, 1987.

Review denied by Supreme Court July 1, 1987.