# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON                )
                                   )    No. 68661-5-I
            Respondent,            )
                                   )    DIVISION ONE
        v.                         )
                                   )    UNPUBLISHED OPINION
PARAMJIT SINGH BASRA,              )
                                   )
            Appellant.             )    FILED: November 25, 2013

GROSSE, J. — Paramjit Basra appeals his first degree murder conviction, contending the State failed to produce sufficient evidence of premeditation. We disagree and affirm the conviction. We also reject the issues Basra raises in his statement of additional grounds as meritless, except as to the community custody term. We accept the State's concession and remand for the trial court to correct the period of community custody.

## FACTS

On July 27, 2009, Amandeep Basra called 911 screaming, "[M]y father's killing my mom." When police arrived at the house, Paramjit Basra (hereinafter Basra) opened the door. An officer immediately put Basra in handcuffs. Basra said, "Ah, ah, the problem is I killed my wife. She's in the room to the right." As another officer walked Basra to a patrol car, Basra said, "I have family problems." Basra also said, "She has problems with men, so I killed her." The police found Basra's wife, Harjinder, lying unconscious on the bedroom floor, not breathing. Aid personnel transported Harjinder to the hospital, where she died three days later.

The State charged Basra with first degree murder and second degree felony murder. At trial in February 2012, 24-year-old Amandeep testified that on the morning of July 27, 2009, she was working on her homework on the computer in her parents' bedroom while her mother was lying awake on the bed. Then Basra returned to the house and came into the bedroom looking for his wallet. Basra and Harjinder began quarreling. Basra told Amandeep to leave the room. When Amandeep refused, Basra slapped her face. When Harjinder told Basra to stop, Basra grabbed Harjinder by the neck or shoulders and pushed her against the wall. As Basra held and pushed on Harjinder's neck, Amandeep called 911, screaming that Basra was killing her mother, but the call was disconnected. Amandeep then called her brother on the phone. Amandeep testified that she then saw Basra with his hands on Harjunder's neck while Harjinder was lying on the floor near the bedroom door. At some point during the altercation, Amandeep slapped Basra, knocking off his turban, in an attempt to make him stop attacking Harjinder. Amandeep then locked herself in the bathroom to speak to the 911 operator, who had called back. The State also played a recording of Amandeep's 911 calls, in which she said Basra was "beating" Harjinder, he tried to kill Harjinder by "pushing her neck," and "he grabbed a rope and just put it on my mom's neck."

Detective Anna Weller of the Auburn Police Department testified that she interviewed Amandeep in October 2009. Amandeep told her that Basra's attack of Harjinder began when "he got mad and started beating her" by "[s]lapping and pushing" her.

2

Dr. Micheline Lubin, of the King County Medical Examiner's Office, testified that she found two parallel lines across Harjinder's neck, consistent with ligature strangulation, which she identified as the cause of death. Dr. Lubin testified that strangulation by ligature takes 10 to 20 seconds to produce unconsciousness and 30 to 60 seconds to produce irreversible brain damage. Dr. Lubin also testified that a Global Positioning System (GPS) cord found at the scene by police was consistent with the ligature impression on Harjinder's neck.

The jury found Basra guilty as charged. The trial court imposed a standard range sentence on the first degree murder conviction and vacated the felony murder charge.

Basra appeals.

## ANALYSIS

Premeditation

Basra contends the State failed to produce sufficient evidence to determine that he acted with premeditated intent to kill Harjinder. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[1] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[2] We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[3]

---

[1] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[2] Salinas, 119 Wn.2d at 201.
[3] State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

A person is guilty of first degree murder when "[w]ith a premeditated intent to cause the death of another person, he or she causes the death of such person."[4] Premeditation involves "more than a moment in point of time."[5] Premeditation is the deliberate formation of and reflection upon the intent to take a life. It involves the mental process of thinking beforehand, deliberation, reflection, and weighing or reasoning for a period of time, however short.[6] Premeditation may be proven by circumstantial evidence where the inferences drawn by the jury are reasonable and the evidence supporting the jury's finding is substantial.[7] A wide range of proven facts will support an inference of premeditation.[8] Factors relevant, but not necessary, to establish premeditation include motive, procurement of a weapon, stealth, and method of killing.[9]

---

[4] RCW 9A.32.030(1)(a).

[5] RCW 9A.32.020(1).

[6] State v. Gentry, 125 Wn.2d 570, 597-98, 888 P.2d 1105 (1985); State v. Hoffman, 116 Wn.2d 51, 82-83, 804 P.2d 577 (1991).

[7] State v. Pirtle, 127 Wn.2d 628, 643, 904 P.2d 245 (1995); Hoffman, 116 Wn.2d at 83.

[8] Gentry, 125 Wn.2d at 598-99; State v. Finch, 137 Wn.2d 792, 831, 975 P.2d 967 (1999); see, e.g., State v. Ollens, 107 Wn.2d 848, 850-53, 733 P.2d 984 (1987) (sufficient evidence of premeditation where defendant stabbed victim multiple times and then slashed the victim's throat, defendant procured a knife, struck victim from behind, and had motive to kill); State v. Gibson, 47 Wn. App. 309, 312, 734 P.2d 32 (1987) (where victim suffered three blunt force injuries to the head before ligature strangulation by long, thin rope or cord-like object, brief lapse of time was sufficient for jury to find premeditation beyond reasonable doubt).

[9] Pirtle, 127 Wn.2d at 644; see also State v. Ortiz, 119 Wn.2d 294, 297, 312-13, 831 P.2d 1060 (1992) (sufficient evidence of premeditation without discussion of motive or stealth); see also State v. Sherrill, 145 Wn. App. 473, 485, 186 P.3d 1157 (2008) (sufficient evidence of premeditation despite lack of evidence of motive, procurement of a weapon, or stealth).

Relying on State v. Bingham,[10] Basra argues that evidence of ligature strangulation, alone, does not support an inference of premeditation. Basra first claims that the State failed to produce evidence of manual strangulation because Dr. Lubin testified that she did not find physical evidence of manual strangulation. Basra also claims that the State proved nothing beyond a "quick act of strangulation," whether manual or ligature, resulting in Harjinder's death, thereby demonstrating intent, but not premeditation.

But Bingham, in which the State presented nothing more than physical evidence suggesting that a manual strangulation took 3 to 5 minutes to prove premeditation, is easily distinguished from the facts here, which include testimony and statements of an eyewitness to the murder, Amandeep, as well as physical evidence and the opinion of the medical examiner. Viewed in the light most favorable to the State, the evidence showed different methods of attack. Basra began by slapping and pushing Harjinder, then grabbed her neck and held her against the wall, where he continued to manually strangle her. Then Harjinder somehow moved from standing against the wall to lying on the floor near the bedroom door. Finally, while Amandeep was screaming at him and slapping him, and calling 911 and repeatedly screaming at the operator that he was killing her mother, Basra changed his hold on Harjinder's neck, obtained the GPS cord, and then wrapped it around her neck where he held it tightly for at least 30 to 60 seconds. Shortly after the killing, Basra volunteered to police that he had killed his wife because she had problems with men.

---

[10] 105 Wn.2d 820, 719 P.2d 109 (1986).

Thus, in addition to his admitted motive, Basra had several opportunities to deliberate and reflect before he continued with the killing, given Amandeep's attempts to stop him and screams for help, the change in Harjinder's position, and his decision to release her neck and then wrap the cord around it. A rational trier of fact could find beyond a reasonable doubt that Basra acted with premeditation.

Statement of Additional Grounds

In his statement of additional grounds, Basra contends that his conviction of both first degree murder and second degree felony murder violate his right against double jeopardy, that the trial court should have instructed the jury on "separate acts" to support the two charges, and that charging the two crimes violated legislative intent and the applicable "unit of prosecution." But the State may properly file and prosecute multiple counts where the evidence supports the charges, as long as convictions are not entered in violation of double jeopardy protections.[11] Because the trial court properly vacated the second degree felony murder conviction, Basra fails to identify any error.[12]

Basra next argues that the trial court erroneously admitted his statements to the officers as evidence in violation of his constitutional rights. In particular, he claims that he could not have voluntarily and knowingly waived his rights, because he was "completely unable to understand the arresting/detaining officers['] statements." But the trial court held a CrR 3.5 hearing and found that

[11] State v. Calle, 125 Wn.2d 769, 777 n.3, 888 P.2d 155 (1995).
[12] See, e.g., State v. Womac, 160 Wn.2d 643, 660, 160 P.3d 40 (2007) (multiple convictions entered in violation of double jeopardy principles must be vacated).

Basra's statements, which Basra made in English and which the officers clearly understood, were spontaneous and not in response to police interrogation. Under these circumstances, the trial court properly admitted the statements as voluntary and Basra fails to establish grounds for relief.[13]

Basra also claims that the arresting officer violated his right to an attorney by failing to put him in contact with an attorney immediately upon his request. But nothing in the record supports his claim.

Basra also contends that the prosecutor improperly "coached" State witnesses in violation of ER 612.[14] A prosecutor may not "urge a witness to create testimony . . . under the guise of refreshing the witness's recollection under ER 612."[15] Prosecutorial misconduct is grounds for reversal if the prosecutor's conduct was both improper and prejudicial.[16] Without a timely objection, reversal is required only if the prosecutor's conduct is so flagrant and

---

[13] See, e.g., State v. Ortiz, 104 Wn.2d 479, 484, 706 P.2d 1069 (1985) (spontaneous statement is voluntary and therefore admissible if not solicited and not the product of custodial interrogation).

[14] ER 612, "WRITING USED TO REFRESH MEMORY," provides in pertinent part:

> If a witness uses a writing to refresh memory for the purpose of testifying, either: while testifying, or before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

[15] State v. McCreven, 170 Wn. App. 444, 475, 284 P.3d 793 (2012), review denied, 176 Wn.2d 1015 (2013).

[16] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted and citations omitted).

7

ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative jury instruction.[17]

Although his citations to the record are incomplete and/or inaccurate and he does not indicate that he objected to any particular incident on these grounds at trial, Basra contends that the prosecutor attempted to improperly supplement the testimony of several witnesses rather than merely refresh recollections. He claims that there is "no question of the prejudicial effects" and that "prejudice is clearly now established" when officers were invited to review their reports and Amandeep was directed to review an interview transcript in the jury's presence. But Basra fails to actually articulate an enduring prejudice resulting from any such incident that could not have been neutralized by a curative jury instruction.

Basra also contends that the prosecutor's closing argument was improper because he urged the jury to find him guilty of two counts of murder for one death. He also claims the prosecutor misstated the facts and improperly appealed to the passions and prejudices of the jury. But Basra's descriptions of the prosecutor's arguments are not supported by the record and his claims of error are meritless.

Basra claims that the prosecutor added the first degree murder charge to punish him for exercising his right to a jury trial. He claims that the fact that the prosecutor considered lesser charges during plea negotiations and added the more serious charge without the benefit of any new evidence after he rejected

_____

[17] State v. Warren, 165 Wn.2d 17, 43, 195 P.3d 940 (2008).

the plea offers demonstrates vindictiveness. But his bare assertion is insufficient to support a claim of vindictiveness.[18]

Basra argues he was denied a fair trial when the trial court failed to ensure that he had no conflicts with his trial attorney. Although Basra's attorney indicated on the record during pretrial hearings that counsel and Basra had disagreements over strategy, Basra did not make a motion to discharge his attorney and defense counsel did not move to withdraw. Because Basra did not request new counsel and the record shows nothing more than a disagreement over strategy, Basra fails to demonstrate error.[19]

Basra next claims that his attorney provided ineffective assistance by failing to investigate evidence regarding his mental health. On the contrary, the record reveals that trial counsel presented the testimony of a forensic psychologist and argued to the jury that Basra's mental health issues prevented him from forming the intent to kill his wife. Basra's reliance on matters outside the record, including blood tests and homeopathic medicines, is misplaced in this direct appeal.[20] Likewise, Basra claims the trial court and his attorney interfered with his right to testify by limiting the scope of his direct examination and providing an interpreter to translate his testimony from his native language. But Basra testified at trial, and again, we cannot consider matters outside the record in a direct appeal.

---

[18] State v. Terrovonia, 64 Wn. App. 417, 422-23, 824 P.2d 537 (1992).
[19] See State v. Stenson, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997) (defendant dissatisfied with appointed counsel must show good cause to warrant substitution of counsel; general loss of confidence or trust alone is not sufficient).
[20] State v. McFarland, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995).

Also, because Basra fails to identify any trial error, he is not entitled to relief under the doctrine of cumulative error.

Finally, Basra contends, and the State concedes, that the sentencing court improperly imposed 36 months of community custody for a "sex offense," instead of a "serious violent offense." Although the trial court later entered an order to correct the scrivener's error with regard to the type of offense, the term of community custody must also be corrected to reflect a range of 24 to 36 months. We therefore remand for correction of the term of community custody.

Affirmed and remanded.

WE CONCUR: