[No. 16360-4-I.   Division One.   January 21, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. BRUCE BRADLEY BUSHEY, *Appellant.*

*Mark W. Muenster* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Kathryn Goater, Deputy,* for respondent.

WEBSTER, J.—Appellant Bruce Bradley Bushey appeals a conviction of aggravated first degree murder. He appeals on three grounds: first, he contends that the aggravated first degree murder statute (RCW 10.95.020) is unconstitutional as applied in this case. Second, he claims that the court

erred by failing to dismiss the charge of aggravated first degree murder when there was insufficient evidence of premeditation. Third, he maintains that the court erred by excusing for cause jurors who expressed opposition to the death penalty. We affirm the trial court.

## FACTS

On September 19, 1984, the body of Barbara Jean Hagedorn was found in a bushy, wooded area along the Valley Road in Auburn. The medical examiner determined the cause of death to be strangulation and blunt injuries to the chest. Hagedorn's body was fully clothed, but the blouse was unbuttoned and pulled up. The medical examiner found evidence of sperm in Hagedorn's vagina. He testified that, before her death, Hagedorn had received blunt injuries to the face and her hands had been tied with a nylon stocking ligature.

Bushey was the last person with whom Hagedorn had been seen. They had been in a restaurant in north Auburn on the night of September 16 and had left together around 2 a.m. Hagedorn's car was found in the restaurant parking lot locked with the keys in the ignition, the light switch on, and her purse on the passenger seat.

The information charged Bushey with first degree murder in which it was alleged that the killing was premeditated and was done in the course of the crime of rape. The State subsequently amended the information to charge aggravated murder in the first degree and gave notice of its intention to seek the death penalty.

Prior to jury selection, defense counsel moved to disallow challenges for cause to jurors who indicated they could not inflict the death penalty but who could fairly try the guilt/ innocence phase of the trial. The motion was denied. Subsequently, five prospective jurors who opposed the death penalty were excused on the State's motion for cause.

Bushey described the events of that night to the police as follows: He admitted that he had left the restaurant with Hagedorn. He said they had driven to a secluded spot and

had engaged in consensual sexual intercourse. Hagedorn complained of pain and said she had colitis. Bushey became angry, hit her in the face several times and then strangled her until she stopped breathing. Bushey then redressed her, tied her wrists with nylon stockings and drove to the area where the body was found. When Bushey was asked how he knew she was dead, the police quoted him as saying, "When you quit breathing, you're dead."

Hagedorn's physician testified that he had been treating her for both spastic colitis and a kidney infection. He said that she had pain with intercourse, pain on walking and pain when jarred. He had advised her not to have intercourse. Hagedorn's boyfriend confirmed that they had not had intercourse for 2 weeks to a month.

At the close of the State's evidence, defense counsel moved to dismiss the charge of aggravated first degree murder. The motion was denied. The jury returned a verdict of aggravated first degree murder. Bushey was sentenced to life imprisonment without the possibility of parole.

## EQUAL PROTECTION

Bushey first contends that his equal protection rights were violated by the prosecutor's discretion to charge either aggravated first degree murder or first degree murder. Equal protection of the law guaranteed by the fourteenth amendment of the United States Constitution and article 1, section 12 of the Washington State Constitution is violated when the prosecutor can seek different punishment for the same crimes. *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970); *State v. Thomas*, 35 Wn. App. 598, 668 P.2d 1294 (1983). All persons must be subjected to the same degree of punishment for the same crimes. *State v. Ensminger*, 77 Wn.2d 535, 463 P.2d 612 (1970).

■■ This court has perceived no equal protection problem with the aggravated first degree murder statute. *State v. Carey*, 42 Wn. App. 840, 850, 714 P.2d 708 (1986). Varying punishments for the same crime classification may

rest upon rational distinctions between motives and methods. *State v. Workman,* 90 Wn.2d 443, 456, 584 P.2d 382 (1978). The aggravated circumstances enumerated under RCW 10.95.020 elevate first degree murder to aggravated first degree murder because of the increased gravity of the offense. *State v. Kincaid,* 103 Wn.2d 304, 312, 692 P.2d 823 (1985). Consequently, aggravated first degree murder carries a penalty of life imprisonment without the possibility of parole or, in the absence of mitigating circumstances, the penalty is death. RCW 10.95.030. However, first degree murder carries a penalty of life imprisonment with the possibility of parole. RCW 9A.32.040. The prosecutor's discretion is controlled by proof requirements that must be fulfilled in order to obtain the higher degree of punishment for aggravated first degree murder. *State v. Carey, supra* at 851.

Bushey next contends that the aggravated murder statute does not genuinely narrow the class of first degree murders to justify the imposition of a more severe sentence. "[A]n aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 877, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983). Because the prosecutor must prove both premeditation and the statutory aggravating factor, the enhanced punishment is justified. *State v. Kincaid, supra* at 310–11; *State v. Bartholomew,* 101 Wn.2d 631, 635, 683 P.2d 1079 (1984). As the Washington State Supreme Court noted in *Bartholomew*:

> Under the Washington statute, of that class of persons guilty of first degree murder, the jury may consider the death penalty only if one of the aggravating circumstances set forth in RCW 10.95.020 is also found to exist. This genuinely narrows the class of persons subject to the death penalty as constitutionally required.

*Bartholomew,* at 635.

## PREMEDITATION

Bushey next challenges the sufficiency of the evidence to prove premeditation. The standard of review is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

The Washington State Supreme Court defines premeditation as "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *State v. Brooks,* 97 Wn.2d 873, 876, 651 P.2d 217 (1982). Recently the court approved an instruction defining premeditation as follows:

"[T]he term 'premeditate' encompasses the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for an appreciable period of time, however long or short, but more than a mere moment in time."

*State v. Hughes,* 106 Wn.2d 176, 199, 721 P.2d 902 (1986). Premeditation must involve more than "a moment in point of time." RCW 9A.32.020(1).

Bushey contends that, to prove premeditation, the State relied solely on the medical examiner's testimony that manual strangulation takes 3 to 5 minutes. "[M]anual strangulation alone is insufficient evidence to support a finding of premeditation." *State v. Bingham,* 105 Wn.2d 820, 828, 719 P.2d 109 (1986). While the time required for strangulation is sufficient to permit deliberation, evidence of actual deliberation must also be presented. *Bingham,* at 827.

■ Actual deliberation can be proved by circumstantial evidence where inferences drawn by the jury are reasonable and the evidence supporting the jury's findings is substantial. *State v. Luoma,* 88 Wn.2d 28, 33, 558 P.2d 756 (1977). For example, in *State v. Robtoy,* 98 Wn.2d 30, 653 P.2d 284 (1982), the defendant had sexual relations with the victim

and then strangled him with an electrical cord. The victim knew the defendant had overstayed his furlough from a correction center and advised the defendant to turn himself in. The jury could have reasonably inferred that the defendant had reflected on silencing his victim to escape detection. In *State v. Harris,* 62 Wn.2d 858, 385 P.2d 18 (1963), the victim was strangled with a vacuum cleaner cord after the assailant inflicted a terrific head beating. The interim time period between the beating and the strangulation and the use of the vacuum cleaner cord allowed the inference that the defendant had reflected upon his acts. In *State v. Snook,* 18 Wn. App. 339, 567 P.2d 687 (1977), the victim was strangled after the defendant "lured" him to the prison yard with the intention of "paying back" the victim for a past grudge. Holding a grudge raised the inference of thinking beforehand.

Bushey argues that *Bingham* is factually similar to his case. In *Bingham,* the defendant met his victim on a bus. The two exited the bus together and started to hitchhike on a rural highway. The defendant raped his victim in a field along the highway. Before raping her, he held his hand over her mouth and strangled her. Although the Washington State Supreme Court found time for deliberation, it found no evidence from which the jury might have inferred actual deliberation. *State v. Bingham, supra* at 827.

The case at bar differs from *Bingham.* Here, the State presented evidence from which the jury could reasonably have inferred actual deliberation. The medical examiner testified that before Hagedorn's death, she had received blunt injuries to the face, and her hands had been tied with a nylon stocking ligature. These acts required "thinking beforehand." They are consistent with planning but inconsistent with impulse or spontaneity. Bushey had an opportunity to withdraw from his course of action. *See State v. Hughes, supra* at 199. Therefore, substantial evidence supported the jury's inference that Bushey deliberated for more than "a moment in point of time" as required under RCW 9A.32.020(1).

## DEATH QUALIFYING THE JURY

■ Finally, Bushey alleges that the trial court violated the Sixth Amendment in excusing for cause five potential jurors who expressed opposition to the death penalty. In *Witherspoon v. Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968), the Court permitted the exclusion for cause of "Witherspoon excludables"—those jurors who made it unmistakably clear that they would automatically vote against the death penalty or those whose attitudes toward the death penalty would prevent their making an impartial decision as to guilt. *Witherspoon,* at 522 n.21. However, those potential jurors with general objections to the death penalty or conscientious or religious scruples against the death penalty could not be excluded for cause because they were still able to make the discretionary judgment regarding the death penalty and to follow their oath. *Witherspoon,* at 519.

Recently, the Court has again upheld the exclusion of "Witherspoon excludables". *Lockhart v. McCree,* ___ U.S. ___, 90 L. Ed. 2d 137, 106 S. Ct. 1758, 1766 (1986). The exclusion for cause of potential jurors because of their views against imposing capital punishment has similarly been upheld by the Washington State Supreme Court. *State v. Hughes,* 106 Wn.2d 176, 181, 721 P.2d 902 (1986); *State v. Mak,* 105 Wn.2d 692, 705–08, 718 P.2d 407 (1986); *State v. Jeffries,* 105 Wn.2d 398, 410–12, 717 P.2d 722 (1986).

Applying these principles, the trial court correctly allowed the State's five challenges for cause. Each of the excluded jurors indicated that he or she was unable to temporarily set aside opposition to the death penalty and to apply the rule of law that a defendant receive the death penalty once the State proves aggravated first degree murder and the absence of mitigating circumstances.

Affirm.

SCHOLFIELD, C.J., and WILLIAMS, J., concur.

Reconsideration denied February 27, 1987.

Review denied by Supreme Court May 5, 1987.