568 So.2d 965 (1990)
Donald Lewis SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 89-332.
District Court of Appeal of Florida, First District.
October 2, 1990.
Rehearing Denied November 14, 1990.
*966 Barbara M. Linthicum, Public Defender, Paula S. Saunders, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
WOLF, Judge.
This is an appeal from a final judgment and sentence for first degree murder. The appellant raises six issues on appeal, only two of which merit discussion: (1) Whether the trial judge erred in denying appellant's motion for a judgment of acquittal; and (2) whether the trial court erred in denying the defendant's pretrial motion to determine the state's good faith pursuit of the death penalty. We find that there was insufficient evidence of premeditation to support a conviction for first degree murder, but affirm as to all other issues.
The appellant, Donald Lewis Smith, was previously married to the victim, Judy Smith. Although they had divorced, they were living together at the time of Judy's disappearance on March 17, 1988. The victim was last seen alive at a party with the appellant where they had been seen holding hands.
On March 18, the victim was supposed to have picked up the couple's two children from her father who was baby-sitting. She never appeared. The appellant told a number of inconsistent stories concerning his wife's disappearance. Donald went to the victim's father's house after the disappearance and told him that Judy had left because she was tired of being a wife and mother. He later told the victim's supervisor at work that his wife had disappeared, he didn't know where she went, and she would be back in about two weeks. The appellant told the next-door neighbor that he and Judy had a fight and that she had voluntarily left. Several days after the disappearance, however, the next-door neighbor noticed that all of the victim's personal items, including eyeglasses and contacts, were still at the trailer.
On Tuesday, the 22nd, a neighbor urged the appellant to report to the police that Judy was missing. The appellant agreed but, in fact, never called the police.
There is evidence that both the appellant and the victim were involved in affairs with other persons. The appellant told the victim's supervisor that at the party on the 17th he discovered that the victim was having an affair with a co-worker. About three or four days after the disappearance, the next-door neighbor observed the appellant and another woman with their arms around each other.
The police found the body of Judy Smith floating in Tampa Bay on March 27, 1988. The body was wrapped in chains and had a blue bedspread taped around it.
*967 An autopsy was performed and the medical examiner reported that the body had been in the water for six to eight days. He could not find any evidence of trauma or a wound, but stated that such evidence could have been obscured by decomposition. The medical examiner concluded that the victim died of asphyxiation due to strangulation or drowning. He could not tell, however, whether the victim had been strangled and killed prior to being placed in the water.
The police later searched the appellant's trailer. Among the items seized was the trunk lining from the appellant's car. A chain, similar to the one found on the body that had previously been seen by several neighbors, was not found on the property. In addition, a bedspread was found which matched the bedspread wrapped around the victim's body.
At trial, an FBI agent testified as an expert on forensic chemistry that he examined the pieces of black tape and the bedspread wrapped around the victim's body and noted pink fibers adhering to both exhibits. These fibers were synthetic plastic. The expert testified that he found identical pink fibers on the trunk liner and insulation from the appellant's car. He also compared the tape from the bedspread with tape which had been seized from the defendant's workplace and testified that it was the same type of tape. Appellant was arrested for first degree murder.
Prior to trial, the defense moved to determine the state's good faith pursuit of the death penalty and to bar the state from death qualifying the jury.[1] The defense alleged that there were no aggravating factors which would subject the defendant to the death penalty. The state maintained that the murder was especially heinous, atrocious or cruel in that the evidence might indicate that the victim had been placed in the water while still alive. The court denied the defense motion and sustained the state's challenge for cause to six prospective jurors based on their opposition to the death penalty. Following deliberations, the jury found the defendant guilty of first degree murder. After the jury returned its verdict, the state agreed that it was no longer seeking the death penalty. The defense made no further objections to the state's death qualification of the jury.
Premeditation is the essential element which distinguishes first degree murder from second degree murder. Wilson v. State, 493 So.2d 1019, 1020 (Fla. 1986), citing Anderson v. State, 276 So.2d 17 (Fla. 1973).
Premeditation is more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.
Roberts v. State, 510 So.2d 885, 888 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988), citing Wilson v. State, 493 So.2d 1019, 1021 (Fla. 1986).
Premeditation may be proven by circumstantial evidence. Cochran v. State, 547 So.2d 928 (Fla. 1989). Whether the evidence fails to exclude a reasonable hypothesis of innocence is generally a jury question. If there is substantial, competent evidence to support it, the jury verdict will not be reversed. Id. at 930. However, Cochran also says, "Where the element of premeditation is sought to be established by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference." Id.
Where the state's proof fails to exclude a reasonable hypothesis that the homicide occurred other than by premeditated design, a verdict of first degree murder cannot be sustained. Hall v. State, 403 So.2d 1319 (Fla. 1981); Jenkins v. State, 120 Fla. 26, 161 So. 840 (1935); Tien Wang v. State, 426 So.2d 1004 (Fla. 3rd DCA 1983), rev. denied, 434 So.2d 889 (Fla. 1983). Some of the evidence from which a jury may infer premeditation is the nature of the weapon, presence or absence of adequate provocation, previous difficulties between the parties, *968 the manner in which the homicide is committed, the nature and manner of the wound, and the accused's actions before and after the homicide. Cochran v. State, supra; Larry v. State, 104 So.2d 352, 354 (Fla. 1958); McConnehead v. State, 515 So.2d 1046 (Fla. 4th DCA 1987); and Fratello v. State, 496 So.2d 903 (Fla. 4th DCA 1986).
In the instant case, however, the state was unable to prove the manner in which the homicide was committed, what occurred immediately prior to the homicide, the nature of the weapon, or the nature of any wounds. In addition, there was no evidence of the presence or absence of provocation and very little evidence of previous difficulties between the appellant and the victim.
Even taking the evidence presented in the light most favorable to the state, as we are required to do by Cochran, the state merely established the following: The parties were divorced but were still living together; the appellant was having an affair which continued immediately after the death of the victim; on the night the victim disappeared, the appellant may have discovered that the victim was having an affair; the appellant took a number of steps to cover up the crime, including not immediately reporting to the police that the victim was missing and lying about the fact that the victim voluntarily left the trailer. The strongest evidence against the defendant concerned his efforts to conceal the homicide.
While all of these factors are consistent with a homicide, none of them is inconsistent with a killing which may have occurred in the heat of passion or without premeditation. Because the evidence is not inconsistent with every reasonable hypothesis of innocence, we must vacate the judgment for first degree murder and instruct the court to enter a judgment for second degree murder.
The appellant also asserts that the trial court erred in denying the pretrial motion to determine whether the state was pursuing the death penalty in good faith. The appellant argues that the prosecutor acted in bad faith by death qualifying the jury and thereby excluding otherwise qualified jurors from participation. See Reed v. State, 496 So.2d 213 (Fla. 1st DCA 1986), rev. denied, 504 So.2d 768 (Fla. 1987).
As this court stated in Reed, supra, the death qualifying of a jury by the prosecution, where there is no evidence to support the imposition of the death penalty, may require a reversal of conviction when such an issue is properly presented to the court and preserved for appeal. In the instant case, the issue is not properly before us. In State v. Bloom, 497 So.2d 2 (Fla. 1986), and State v. Donner, 500 So.2d 532 (Fla. 1987), the supreme court held that a circuit court judge lacks authority to decide prior to trial whether the death penalty will be imposed. The judge, therefore, cannot prior to trial determine whether the prosecutor is pursuing the death penalty in good faith.
There may be cases, however, after all the evidence has been heard, where the court should conduct an inquiry as to whether the prosecutor's pursuit of the death penalty was in good faith. Such an inquiry should only be made where the facts indicate evidence of bad faith, and the defense has properly requested an inquiry after trial. We cannot, in the instant case, reach that issue here in light of the fact that the defense, after all the evidence was before the court, never asked for such a determination. Nor are we willing, on the record before us, to rule that the prosecutor acted in bad faith. The trial court did not, therefore, err in denying the pretrial motion of the defense.
Accordingly, the appellant's conviction for first degree murder is reversed with directions to reduce the conviction to second degree murder and to resentence the defendant.
WIGGINTON, J., concurs.
BARFIELD, J., concurs with opinion.
BARFIELD, Judge, concurring.
I concur in the result reached by the majority; however, I disagree with the majority's *969 suggestion that the matter of good faith in pursuing the death penalty can only be considered after trial. The decisions cited by the majority that say the trial court cannot decide prior to trial whether the death penalty will be imposed, do not preclude the trial judge from considering whether the prosecution is acting in bad faith when it says it intends to seek the death penalty. If the defense can demonstrate that the prosecution has no intention to seek the death penalty, it would then follow that there would be no basis for the court to even entertain the death penalty following trial.
I agree with the majority's conclusion that the evidence in this case is not inconsistent with every reasonable hypothesis other than premeditation, and conclude that the trial judge should have limited consideration to second degree murder following the state's case-in-chief.
NOTES
[1] In cases where the death penalty may be imposed, death qualifying a jury is the practice of exercising challenges for cause when a juror opposes the death penalty.