615 So.2d 713 (1993)
Tony Owen DUPREE, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1935.
District Court of Appeal of Florida, First District.
January 11, 1993.
Rehearing Denied April 23, 1993.
*714 Nancy A. Daniels, Public Defender, and Gail Anderson, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., for appellee.
MINER, Judge.
In this appeal from a conviction for premeditated, first degree murder, appellant, Tony Owen Dupree, contends that the trial court erred by (1) denying his motion for judgment of acquittal, because the state's evidence was insufficient to establish premeditation, (2) excluding proffered testimony regarding the victim's character, and (3) giving a flight instruction to the jury. We disagree with appellant's contentions as to the first two issues. Nonetheless, following the rule stated in Fenelon v. State, 594 So.2d 292 (Fla. 1992), we are required to reverse the conviction and remand the case for new trial, due to the lower court's erroneous instruction on flight.
Turning to the first issue, appellant urges that the evidence was legally *715 insufficient to establish first degree, premeditated murder. Premeditation is the essential element that distinguishes first degree murder from second degree murder. Wilson v. State, 493 So.2d 1019, 1021 (Fla. 1986); Smith v. State, 568 So.2d 965, 967 (Fla. 1st DCA 1990). Premeditated design is more than a mere intent to kill. It is a fully formed and conscious purpose to take human life, formed upon reflection and deliberation and entertained in the mind both before and at the time of the homicide. Wilson, 493 So.2d at 1021; Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
Premeditation, like the other elements of first degree murder, may be established by circumstantial evidence. Preston v. State, 444 So.2d 939, 944 (Fla. 1984). Evidence from which premeditation may be inferred includes the nature of the weapon used, the presence or absence of adequate provocation, previous problems between the parties, the manner in which the murder was committed, the nature and manner of the wounds inflicted, and the accused's actions before and after the homicide. Id. at 944; Sireci, 399 So.2d at 967; Smith, 568 So.2d at 967-68.
If the state relies on circumstantial evidence to prove premeditation, the evidence must be inconsistent with any reasonable hypothesis of innocence. Cochran v. State, 547 So.2d 928, 930 (Fla. 1989); Wilson, 493 So.2d at 1022. Whether the state's evidence fails to exclude all reasonable hypotheses of innocence is a question of fact for the jury. Holton v. State, 573 So.2d 284, 289 (Fla. 1990) (citing Cochran, 547 So.2d at 930). If there is substantial competent evidence to support the jury verdict, the verdict will not be reversed. Id.
In the case at bar, Dupree was indicted for first degree murder in the death of Clara Lawrence. At trial, the state presented evidence that a fisherman discovered the victim's body in Pond Creek, an isolated area in rural Santa Rosa County about mid-morning on December 19, 1988. Investigators and the medical examiner were summoned to the scene and, in due course, the body was removed. Because no identification was found on the body, police artists did a sketch of the victim and thereafter requested an area television station to display this likeness on the evening news program. Within minutes of the newscast, authorities received a phone call from the victim's daughter who feared the body was that of her mother. Such proved to be the case.
Upon questioning, the victim's daughter recounted that she had last seen her mother alive about 7:30 p.m. on Sunday, December 18 in the company of someone introduced to her as "Larry" from Milton. Both Clara and "Larry" had been drinking. The two stayed at the daughter's house about five minutes and then left.
A neighbor of the victim's daughter told investigating authorities that the victim and a man she later identified as Dupree came by her house around 2:00 p.m. on December 18. She described the vehicle in which they arrived as a small red truck with a red bicycle in the truck bed. The visitors stayed about an hour and then left.
Mrs. Baggett, the victim's mother, told investigators that she saw the victim and a man she later identified as the appellant when they came by her house at about 9:30 p.m. on December 18. The two had been drinking and shortly after their arrival, the victim asked the man to go outside and bring in some more beer. The man went out and returned shortly thereafter with a paper sack containing cans of Old Milwaukee Best beer. Apparently concerned that it might be stolen, the man also brought a red bicycle into the house with him. After sitting and visiting for awhile, the man went back to an unoccupied bedroom and lay down on the bed. Shortly thereafter he was joined by the victim. Mrs. Baggett went to her room and dozed off, but was awakened by a barking dog at around midnight. She got up and found the victim, the man and the bicycle gone and as she looked out a window saw a vehicle departing the scene.
On the basis of descriptions provided by the victim's daughter, the neighbor and *716 Mrs. Baggett, investigators put together a composite sketch of a man and caused it to be displayed during a television newscast on December 28. As a result of this display, a telephone call directed investigators to a small house trailer occupied by appellant and his wife. Upon their arrival at the trailer, it was dark. By headlight illumination, the investigators noticed a small red truck parked outside and a red bicycle standing beside the trailer. They knocked at the front door and were met by a woman who identified herself as appellant's wife and who advised them that appellant was not at home. They testified that the woman appeared very nervous and that they could hear someone else moving inside the trailer but decided to return to their vehicle and request backup assistance. While standing at their vehicle, one of the investigators saw clothes falling from a clothesline at the rear of the trailer as if someone had knocked them off. Only then did the woman call to the investigators and invite them into the trailer. Investigation inside the trailer revealed a small window at the rear in close proximity to the clothesline from which someone could have exited. The investigators left and returned the following morning when further investigation revealed footprints leading away from the trailer across a plowed field and into a wooded area. Authorities mounted a manhunt and, enlisting the assistance of appellant's mother, they apprehended appellant on December 29 as he emerged from the wooded area armed with a semi-automatic rifle, ammunition and two knives.
During questioning after his arrest, appellant told investigators that he had last been in the Pond Creek area some four months previously. He explained the absence of the mustache which witnesses had described him as wearing by saying that he had shaved it off in keeping with a family Christmas tradition. He denied that he knew or had ever been with or seen Clara Lawrence except that he had seen the sketches of her on television.
With respect to his whereabouts during the last day of Clara's life, Dupree stated that he and his wife returned from church and he thereafter went alone to visit a friend in Pensacola. Finding no one home, he sat down on the lawn and watched a touch football game in progress. After leaving Pensacola, he said his truck broke down on the side of the road due to lack of oil and he had to ride his bicycle home, arriving there about 10:30 p.m. and remaining there for the rest of the night. According to Investigator Bryant, one of appellant's interrogators, as the interview concluded, appellant told Bryant and Investigator Spencer that "there was no need to drag it out for we knew what had happened."
Dr. Nicholson, the medical examiner, testified that he arrived at the death scene about midafternoon on December 19 and examined the body of Clara Lawrence when it was removed from the water. He testified that she died from asphyxiation secondary to being strangled either manually or with a soft cloth. He summarized injuries sustained by the victim to include hemorrhages in both eyes, which is usually caused by the force involved in strangulation; bruises and red marks on the neck; bruises on the forehead, back and side of the head, and chest which were consistent with the victim having been beaten; scratches on the back which were consistent with having been dragged by the feet and facial swelling around the left eye which was blackened. Dr. Nicholson further stated that death by strangulation takes several minutes  unconsciousness usually occurs within a matter of seconds after the blood supply to the brain is cut off, but it takes several more minutes for a person to die. He testified that quite a bit of force was necessary to strangle a person, which force was evidenced by eye hemorrhages. In his opinion, the victim had been in the water for up to 16-20 hours before he arrived. If one accepts the 16 hour figure, such would indicate that Clara was killed sometime shortly after midnight.
During its case-in-chief, the state also presented forensic evidence. A serologist testified that soil and a piece of paper collected from the Pond Creek scene contained human blood of type A, which was the victim's blood type. A latent fingerprint *717 examiner testified that two Old Milwaukee Best beer cans, one found at the Pond Creek scene and one found in the back bedroom at Mrs. Baggett's house had fingerprints on them which were made by appellant. Another expert testified that two tire tracks found at the Pond Creek scene were consistent with having been made by tires on appellant's truck. The state also presented photographs of what it contended were drag marks on the ground next to Pond Creek and introduced a tree branch found at the Pond Creek scene which had what a state witness opined was oil on it. Another state witness later testified that appellant's truck was leaking oil.
After the state concluded its case and after defense counsel moved for a judgment of acquittal, which was denied, the defense offered testimony that Clara Lawrence fished frequently at Pond Creek. Additionally, appellant's mother testified that she, appellant and his wife often cooked out at Pond Creek  usually weekly. She contradicted the statement given to investigators by her son that he had not been to Pond Creek for four months when she testified that the three had been there on the Friday afternoon before the Sunday when Clara was killed. At the conclusion of the defense case, the defense renewed its motion for judgment of acquittal which was again denied. The jury returned a verdict of first degree premeditated murder and this appeal ensued.
As to the premeditation issue, we believe Holton v. State, 573 So.2d 284 (Fla. 1990), a case markedly similar to the case at bar in many substantive respects, to be controlling. In Holton, the defendant argued, as does appellant in this case, that the state's evidence was insufficient to support a conviction for premeditated murder in that it did not exclude the reasonable hypothesis that the death of the victim was accidental or not premeditated. In rejecting Holton's argument on this score, the supreme court recounted the following operative facts.
On June 23, 1986, shortly before midnight, the partially charred and unclothed body of Katrina Graddy was found in a burning vacant house. It was determined that the fire was started intentionally and that Graddy's death was caused by strangulation. During the investigation that ensued, a witness said that around 11:00 p.m. he had seen Holton and the victim outside the vacant house where her body was found. Another witness said she saw Holton enter the vacant house about that same time. A jailhouse informant told investigating authorities that Holton told him "he had killed a girl, that he had strangled her" and then set fire to the building. The informant further said that Holton told him he had not intended to kill the victim.
When questioned by investigators, Holton claimed he was at home at the time of the murder. He denied having been to the vacant house in the last 10 days. When told that his fingerprint had been found on the wrapper of an empty pack of cigarettes removed from a room in the house, Holton admitted he had been shooting drugs in the house several days before the homicide occurred but denied being near the house on the night of the murder. Subsequently, at trial, Holton produced as a defense witness an elderly man with whom he lived who testified that Holton came home on the evening in question at about 10:00 p.m. When Holton was arrested, photographs were taken of him depicting scratches on his chest and a cut on his finger. Among other offenses, the jury returned a verdict of guilty of premeditated murder and the Florida Supreme Court affirmed this conviction.
In at least ten material respects, the facts as recited by the supreme court in Holton and the established facts in the case before us are substantially similar. The death of each victim was caused by strangulation and an attempt was made to dispose of the body. In each case, the state's evidence that the defendant committed premeditated murder was circumstantial. In each case, witnesses placed the victim and the defendant together shortly before the killing. The fingerprints of each defendant were found at the scene of the crime. Both Holton and Dupree gave exculpatory statements and each offered an alibi. There was no evidence of any conflict between Holton and Graddy or Dupree *718 and Clara Lawrence. In each case, there was evidence from which a jury could infer that a struggle had taken place in connection with the killing. When confronted with the fingerprint evidence tying him to the crime scene, Holton said he had been in the vacant house doing drugs some ten days before. Asked by investigators if he had ever been to the location where Clara Lawrence's body was found, Dupree said he had been there some four months previously. When his fingerprints were found on a beer can at the scene, Dupree's mother testified that she, appellant and his wife had a cookout at the scene on the Friday before the Sunday Clara Lawrence was killed and that appellant had a penchant for walking around picking up discarded beer cans.
Based on the supreme court's conclusion that the circumstantial evidence in Holton was sufficient to permit a jury to infer premeditation, we hold that the evidence in the case at bar is likewise sufficient. The state presented evidence which is inconsistent with a theory that the victim was murdered during an argument with the defendant in that Officer Bryant testified that appellant told him after his arrest that he had never met and did not know the victim. Moreover, the state presented evidence from which the jury could have found premeditation, although there was no way of knowing whether Clara Lawrence had been strangled manually or by some sort of ligature. For instance, Dr. Nicholson testified that Clara Lawrence had bruises on the front, side and back of her head, as well as a bruise on her chest, and a blackened eye, all of which were fresh wounds and consistent with Clara having been beaten prior to her death. Dr. Nicholson also testified that death by strangulation takes several minutes to accomplish; in fact, the strangulation must continue for several minutes after the victim loses consciousness.[1] In addition to the nature of the wounds inflicted on the victim, there was evidence of a struggle in that there were scuff marks on the ground. Moreover, the crime occurred at night in a secluded, wooded area not visible from any highway. In sum, the state's evidence was such that premeditation could reasonably be inferred by the jury.
Viewing the facts and all reasonable inferences drawn from those facts in a light most favorable to the state, we believe that the evidence adduced at trial supports the reasonable inference that the victim was subjected to a beating which resulted in bruises to the forehead, back and side of the head, and chest, and that the jury could have reasonably inferred that this beating was inflicted prior to the strangulation. From the beating and the "drag marks" found at the pond, the jury could have reasonably inferred that a struggle had taken place. The appreciable time between *719 the struggle, the beating, and the strangulation, however small, would be sufficient time for the assailant to reflect upon his actions, and supports a jury verdict of premeditated murder. Moreover, from the discovery of the body at the pond, the jury could have reasonably concluded that the victim was taken to the secluded area at night for the express purpose of facilitating her death. From these collective facts and reasonable inferences, we hold that submission of the charge of first degree murder to the jury was not error, that the facts constitute substantial competent evidence to support the jury verdict, and further find that such a result is compelled by the Florida Supreme Court decision in Holton.[2]
Despite our approval of the submission of the question of premeditation to the jury, other trial error requires that appellant be afforded a new trial. Because there was evidence of flight in this case, the trial court gave a flight instruction over appellant's objection. The Florida Supreme Court has recently concluded, however, that such an instruction amounts to an improper comment by the trial judge on the evidence, and directed "that henceforth the jury instruction on flight shall not be given." Fenelon v. State, 594 So.2d 292, 295 (Fla. 1992).
Although the trial judge below admittedly did not have the benefit of Fenelon when she instructed the jury, we consider that retrospective application of the Fenelon rule is mandated by Smith v. State, 598 So.2d 1063 (Fla. 1992). In Smith, pertaining to the retroactive application of Pope v. State, 561 So.2d 554, 556 (Fla. 1990),[3] the court stated:
[W]e hold that any decision of this Court announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final. To benefit from the change in law, the defendant must have timely objected at trial if an objection was required to preserve the issue for appellate review.
Smith, 598 So.2d at 1066. (citation & footnote omitted; emphasis added). Because appellant at bar timely objected to the instruction, and because the error cannot be considered harmless in view of the circumstantial nature of the evidence, we reverse as to this issue and remand for new trial to be conducted as to the offense of first degree murder.
Although our disposition of the above issues makes it unnecessary to address the merits of the evidentiary issue appellant raised in his second point regarding the exclusion of character evidence, we consider that some direction from us may *720 be appropriate in that the case must be remanded for new trial. At the trial, appellant attempted to introduce testimony regarding the victim's character for drinking and fighting. Appellant proffered outside the jury's presence testimony from two witnesses regarding specific instances regarding the victim's violent and/or abusive conduct when she was under the influence of alcohol. The trial court excluded this testimony pursuant to the provisions of Section 90.404, Florida Statutes (1987). Section 90.404 provides, in pertinent part, as follows:
(1) CHARACTER EVIDENCE GENERALLY.  Evidence of a person's character or a trait of his character is inadmissible to prove that he acted in conformity with it on a particular occasion, except:
* * * * * *
(b) Character of victim. 
1. Except as provided in s. 794.022 [rules of evidence in sexual battery chapter], evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the trait... .
The Law Revision Council Note to section 90.404 comments that the statute intended to limit the use of character evidence when offered for the purpose of inferring that a person acted in conformity with his character during the occasion in question and that it is basically a codification of existing case law. 6B Fla. Stat. Ann. 355 (1979). Although Professor Ehrhardt, in discussing section 90.404, does not explicitly state that evidence of the aggressive nature of the victim's character is admissible only in cases in which self-defense is raised, he observes that such use is the basis on which such evidence is most frequently offered. Charles W. Ehrhardt, Florida Evidence § 404.6, at 137 (1991 ed.) (hereinafter "Ehrhardt"). Our review of Florida case law has, moreover, revealed two cases which hold that a claim of self-defense is necessary before evidence of the victim's aggressive character is admissible. In Garner v. State, 28 Fla. 113, 9 So. 835 (1891), the Florida Supreme Court stated:
Evidence of the violent and dangerous character of the deceased is admissible to show, or as tending to show, that a defendant has acted in self-defense, or, in other words, under such circumstances as would have naturally caused a man of ordinary reason to believe that he was at the time of the killing in imminent danger of losing his life or suffering great bodily harm at the hands of the deceased; but it is not admissible for this purpose, except where it explains, or will give meaning, significance, or point to the conduct of the deceased at the time of the killing, or will tend to do so; and such conduct of the deceased, at the time of the killing, which it is proposed thus to explain, must be shown before the auxiliary evidence of such character can be introduced.
Id., 9 So. at 841.
In Williams v. State, 238 So.2d 137 (Fla. 1st DCA), cert. denied, 241 So.2d 397 (Fla. 1970), this court, in ruling that it was not error to preclude a defendant from introducing character evidence of the victim, stated:
Point V of appellant was that it was error not to permit the defense to show the vicious nature of the deceased and quarrelsome, violent and dangerous proclivities as evidenced by other and prior altercations. We cannot agree with the defendant on this point. Such evidence is admissible where the plea of self-defense is interposed, but until the defendant shows some evidence that he acted in self-defense, such is improper.
Id. at 139.
Indeed, we have found no Florida case in which aggressive character evidence was allowed without evidence as well of self-defense or doubt regarding who was the first aggressor. See, e.g., Fine v. State, 70 Fla. 412, 70 So. 379, 381 (1915); Warren v. State, 577 So.2d 682, 684 (Fla. 1st DCA 1991); Webster v. State, 500 So.2d 285, 287 (Fla. 1st DCA 1986); Quintana v. State, 452 So.2d 98, 100 (Fla. 1st DCA 1984); Hodge v. State, 315 So.2d 507, 510 (Fla. 1st DCA 1975); Woodson v. State, 483 So.2d 858, 859 (Fla. 5th DCA 1986); Pino v. *721 Koelber, 389 So.2d 1191, 1194 (Fla. 2d DCA 1980); Banks v. State, 351 So.2d 1071, 1072 (Fla. 4th DCA), cert. denied, 354 So.2d 986 (Fla. 1977). Moreover, federal courts, in interpreting Federal Rule of Evidence 404, upon which section 90.404 is modeled, similarly allow the admission of character evidence only when the accused has raised the issue of self-defense. See United States v. Greschner, 647 F.2d 740 (7th Cir.1981); cf. United States v. Kelley, 545 F.2d 619 (8th Cir.1976) (in prosecution for conspiracy to restrain, coerce, and intimidate members of labor union, defendants not permitted to introduce evidence regarding two union members' past threats and violence because defendants presented no defense or justification or excuse, such as self-defense), cert. denied, 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977).
Based upon the foregoing, we agree that the trial court properly excluded the proffered character evidence, because the defendant did not show how the victim's character was pertinent, that is, he did not rely on the defense of self-defense or raise an issue concerning who was the initial aggressor.
Even if one assumes that the proffered character evidence was admissible under section 90.404, it nonetheless would have been inadmissible under Section 90.405, Florida Statutes (1987), which prescribes the means by which character may be proven. Ehrhardt at § 404.1. Section 90.405 provides:
(1) REPUTATION.  When evidence of the character of a person or of a trait of his character is admissible, proof may be made by testimony about his reputation.
(2) SPECIFIC INSTANCES OF CONDUCT.  When character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may be made of specific instances of his conduct.
Because the victim's character was not an essential element of the crime or defense at bar, proof of same was required to be made by reputation evidence. See Ehrhardt at § 405.3. Reputation evidence is evidence of a person's character within the community. Such evidence does not include specific acts or opinion testimony. Id. at § 405.1. In the case at bar, the proffered testimony of the two witnesses divulges appellant's attempt to introduce specific act testimony  not reputation evidence. Therefore, such evidence was inadmissible under section 90.405. See, e.g., Taylor v. State, 513 So.2d 1371, 1372 (Fla. 2d DCA 1987); see also Perrin v. Anderson, 784 F.2d 1040 (10th Cir.1986).
REVERSED and REMANDED for a new trial consistent with this opinion.
ERVIN, J., concurs with opinion.
ZEHMER, J., concurs and dissents with opinion.
ERVIN, Judge, concurring.
I concur with the majority in its disposition of all points raised. As to the first point, however, asserting that the trial court erred in denying appellant's motion for judgment of acquittal, because the state's evidence was insufficient to establish premeditation, I confess that I am unable to distinguish the holding in Smith v. State, 568 So.2d 965 (Fla. 1st DCA 1990), from the holding in the instant case regarding the issue of premeditation. In Smith, as recounted in the majority's opinion, ante at 719, footnote 2, the victim's body was found, wrapped in a bedspread and bound in chains, floating in Tampa Bay. Because of the decomposed state of the body, it was impossible to determine whether the victim had been strangled before being placed in the bay or whether she died from drowning. Pink fibers adhering to the black tape on the bedspread wrapped around the victim's body were found to be identical to fibers found on both the trunk liner and insulation inside the appellant's car; yet the court in Smith held the evidence of premeditation insufficient, because the state's evidence was not inconsistent with the reasonable hypothesis that the victim's death "may have occurred in the heat of passion or without premeditation." Id. at 968. It thereupon reversed appellant's conviction of first degree murder with directions *722 that the conviction be reduced to second degree murder.
Under the circumstances existing in Smith, I consider it immaterial whether the state presented proof concerning the specific cause of death, i.e., by a premeditated act of homicide, such as strangulation before the body was placed in the water, or afterward, by drowning. Based upon the evidence in Smith and the case at bar, I regard both cases to be controlled by the supreme court's decision in Holton v. State, 573 So.2d 284, 289 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991), in which the court, after considering the evidence, concluded, "[T]here was sufficient evidence from which the jury could have inferred premeditation to the exclusion of all other possible inferences, including accidental death."
In fairness to the panel in Smith, it appears that it did not have the benefit of Holton when it decided Smith. Holton, in fact, was decided five days before this court's decision in Smith; however, Holton did not become final until it was modified on rehearing sometime after this court's decision in Smith. I therefore agree with the majority's conclusion that the trial court correctly allowed the case to go to the jury on the issue of premeditation.
ZEHMER, Judge, dissenting and concurring.
I agree that the conviction must be reversed for a new trial based on the giving of the flight instruction over the defendant's objections. Likewise, I agree that no error was committed by the exclusion of the evidence of the victim's supposedly violent character. I respectfully dissent from the conclusion that the circumstantial evidence was sufficient to support the conviction of first degree premeditated murder.
I agree with Judge Ervin that our ruling in Smith v. State, 568 So.2d 965 (Fla. 1st DCA 1990), concerning the insufficiency of the circumstantial evidence to prove premeditation is indistinguishable from the instant case and mandates reversal of Dupree's conviction of first degree premeditated murder. Judge Miner's opinion sets forth a complete recitation of the evidence presented at trial. The circumstantial evidence was unquestionably sufficient to support the jury's finding that Dupree committed the murder of the victim. However, the evidence was not legally sufficient to exclude every reasonable hypothesis of innocence in respect to the premeditation element. The supreme court's recent opinion on rehearing in Holton v. State, 573 So.2d 284 (Fla. 1990), which the majority find controlling on the instant case, is factually distinguishable.
In Holton the supreme court reiterated that the element of premeditation may be shown by circumstantial evidence, but continued:
However, to prove a fact by circumstantial evidence, the evidence must be inconsistent with any reasonable hypothesis of innocence. Cochran v. State, 547 So.2d 928, 930 (Fla. 1989); McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977). Thus, when attempting to establish premeditation by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference that could be drawn. Cochran, 547 So.2d at 930; Wilson v. State, 493 So.2d 1019, 1022 (Fla. 1986).
573 So.2d at 289.
The only facts in the instant case that support an inference of premeditation are the opinion that death was caused by strangulation and bruise marks on the victim's neck and head, indicating that she had been beaten. I agree that the jury could reasonably infer from these facts that the killer acted with premeditation. However, these facts are equally consistent with, and thus do not exclude as reasonable inferences, the fact that the killing was "perpetrated by [an] act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death" of the victim, that is, second degree murder. § 782.04(2), Fla. Stat. (1991). Under the rationale of Judge Miner's opinion, the fact of death by strangulation is sufficient not only to show premeditation, but also to *723 exclude any reasonable inference that the killer only engaged in an act imminently dangerous to the victim without premeditation to kill. In my view, the evidence in this case is susceptible to the finding that Dupree hit the victim and closed his hands around her throat to threaten or intimidate her during the course of an argument without intending to kill her, and although he persisted in that conduct too long, did not necessarily form a conscious or premeditated intention to kill her. Obviously Dupree's acts were imminently dangerous to the victim and sufficient to support a conviction of second degree murder, but I find myself engaging in speculation to say, under this evidence, that Dupree could only have acted with the premeditation required of first degree murder in effecting the death of the victim. Neither this court nor the jury should be permitted to so speculate.
The majority opinion recites inferences that could have been drawn by the jury in this case that, in my view, are nothing more than speculation. For example, the opinion states that the jury could have found that the killing took place at the pond; it further states that "from the discovery of the body at the pond, the jury could have reasonably concluded that the victim was taken to the secluded area at night for the express purpose of facilitating her death." In fact, the killing could just as well have taken place before the body was taken to the pond. In my view, to reach the majority's stated findings to the exclusion of other inferences that the victim's death actually occurred elsewhere during a fight and Dupree thereafter drove to the pond to dispose of the body amounts to pure speculation.
Obviously, in view of these conclusions, I do not agree that Holton is controlling on the instant case. The materially distinguishing facts, in my view, lie in the circumstances and manner of the killing in Holton. There, the "victim was found with a ligature secured tightly around her neck. Death was caused by strangulation." 573 So.2d at 289. There was evidence of other intentional abuses of the victim, including tying the victim's wrists and inserting the neck of a glass bottle partially in her anus, as well as the intentional burning of the building where Holton left the victim's body, clearly establishing that Holton had acted intentionally with premeditation in committing the various offenses on the victim. Holton was convicted of sexual battery of great force and first degree arson, in addition to premeditated murder. In the presence of this evidence of clear intentional acts in addition to the mere fact of death by strangulation, I fully agree with the supreme court's conclusion that the evidence was sufficient to take the premeditation issue to the jury. However, I find that decision distinguishable on the facts from the instant case, and conclude that the evidence presented against Dupree was not legally sufficient to exclude all reasonable inferences that Dupree did not act with premeditation.
One final word about Dupree's denial of knowledge and involvement with the victim in the face of substantial evidence that he had been physically present at various places with her. I do not view this denial as creating any dispute in the evidence concerning the state's proof of premeditation. I disagree with the statement in the majority opinion that, "The state presented evidence which is inconsistent with a theory that the victim was murdered during an argument with the defendant in that Officer Bryant testified that appellant told him after his arrest that he had never met and did not know the victim." Dupree's denial that he even knew the victim is as consistent with an effort to avoid prosecution for second degree murder as to avoid prosecution for first degree premeditated murder. In short, this denial proved nothing in respect to the element of premeditation.
For the reasons stated, I would reverse the conviction of first degree premeditated murder and remand with directions to grant a new trial on second degree murder, consistent with our opinion in Smith v. State, supra.
NOTES
[1] In general terms, we note a split of authority on the question whether strangulation, alone, is evidence sufficient to justify submission of the question of premeditation to the jury. See State v. Bingham, 105 Wash.2d 820, 719 P.2d 109 (1986) (en banc) (strangulation alone is insufficient evidence to support a finding of premeditation); but see Hounshell v. State, 61 Md. App. 364, 486 A.2d 789, cert. denied, 303 Md. 42, 491 A.2d 1197 (Md. 1985) (question whether the time required to produce death by strangulation is sufficient for the assailant to reflect upon his actions before death ensues is a matter for the jury to determine). This specific question, apparently, has not been addressed by the Florida Supreme Court. However, it is not necessary to resolve this question in the present case, for even jurisdictions which hold it error to submit the question of premeditation to the jury based on evidence of strangulation alone acknowledge that strangulation, in conjunction with other facts, such as evidence of a struggle or other injuries inflicted prior to the strangulation, indicates that the assailant had sufficient time within which to reflect upon his or her actions prior to the strangulation, thereby justifying submission of the question of premeditation to the jury. See State v. Gibson, 47 Wash. App. 309, 734 P.2d 32 (1987) (lapse of unspecified amount of time between beating and ligature strangulation sufficient to permit a jury finding of premeditation); State v. Bushey, 46 Wash. App. 579, 731 P.2d 553 (1987) (finding submission of the question of premeditation to the jury correct where victim beaten and hands tied prior to strangulation); Commonwealth v. Lanoue, 392 Mass. 583, 467 N.E.2d 159 (1984) (noting that the victim was beaten prior to her actual strangulation, demonstrating a conscious and fixed purpose to kill continuing for a length of time and warranting a finding of murder with deliberate and premeditated malice aforethought) (citations omitted).
[2] In so saying, we find the prior opinion of this court in Smith v. State, 568 So.2d 965 (Fla. 1st DCA 1990), distinguishable from the case at bar and from Holton. In Smith, the victim's body was found in Tampa Bay wrapped in chains and with a blue bedspread taped around it. The medical examiner determined that the body had been in the water for six to eight days. He could not find any evidence of trauma or a wound, but stated that such evidence could have been obscured by decomposition. The medical examiner concluded that the victim died of asphyxiation due to strangulation or drowning. He could not tell, however, whether the victim had been strangled and killed prior to being placed in the water. In Smith, as opposed to the present case and Holton, the evidence presented was insufficient to establish the manner in which the victim was killed. If the victim had been drowned, the wrapping of the body prior to drowning would have been sufficient to establish premeditation, but the evidence did not establish drowning as the cause of death. Moreover, the autopsy did not reveal signs of trauma indicative of strangulation or strangulation preceded by a beating (if such beating and strangulation did occur), possibly because of the decomposed state of the body. Thus, there was presented to the jury no evidence from which the jury could exclude all reasonable hypotheses that the murder was not premeditated, and on appeal, no substantial competent evidence to support the jury's finding of first degree murder. At most, the evidence presented established the defendant's attempts to conceal the murder, but did not establish the element of premeditation.
[3] The court held in Pope that if an appellate court reverses a trial court's departure sentence due to its failure to assign written reasons, the appellate court must remand for resentencing with no possibility of departure from the guidelines.