COURT OF APPEALS DIV
2013 JUN 17 AM 9: 42


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 68006-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JEFFREY MATTHEW HARPER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 17, 2013 |
| | ) | |

LEACH, C.J. — Jeffrey Harper appeals his conviction for four counts of first degree rape of a child with domestic violence enhancements. He challenges (1) the sufficiency of the evidence, (2) the performance of defense counsel, and (3) a community custody condition prohibiting unsupervised contact with minor children. Finding no error, we affirm.

## FACTS

Harper is the stepfather of K.R., born October 10, 2002. In March 2008, law enforcement removed K.R. and her five siblings from the care of their mother and Harper. K.R. returned to their care in July 2009, only to be removed again in October 2010 due to allegations of physical abuse in the home.

In January 2011, K.R.'s Division of Child and Family Services (DCFS) social worker, Sarah Luft, referred K.R. for a research study at the University of Washington involving therapy for children in foster care. Kate Conover, the coordinator of the study, interviewed K.R. at her foster home to determine K.R.'s

eligibility for the study. As part of a list of standard interview questions, Conover asked K.R. whether she had experienced various traumatic events. When asked whether an adult had ever touched her private body parts when she did not want them to, K.R. replied that Harper had done so. Conover asked K.R. how many times the touching occurred, and K.R. responded that it happened "a few times." Conover asked where the touching occurred, and K.R. stated that it happened in the home she shared with her mother and Harper. Because Conover's interview involved only a standard set of questions, she did not ask K.R. anything further at the time. After Conover finished interviewing K.R., K.R. left the room to go play, and Conover began interviewing K.R.'s foster father. K.R. returned to the room and asked, "[W]hen are you going to ask me the scary, hard things?" When Conover responded that she did not have any more questions for K.R., K.R. stated that she needed to tell Conover something else and wanted to do so in private. Conover accompanied K.R. to K.R.'s bedroom where K.R. reported what Harper had done to her was "S-E-X." K.R. stated that it had started when she was "three or four or five." When Conover told K.R. that she would need to tell other adults what had happened, including K.R.'s social worker, K.R. appeared relieved and said, "[O]h, good, Sarah will help." Conover took extensive notes

about K.R.'s disclosures and reported them to DCFS, which contacted law enforcement.

As part of the law enforcement investigation, child interview specialist Carolyn Webster interviewed K.R. K.R. disclosed several separate incidents of sexual abuse to Webster. K.R. reported one incident in which she was taking a bath and a glass door shattered. Harper took K.R., still naked from the bath, to his bedroom, where he closed the bedroom door, removed a small piece of glass from her foot, and then laid her on the bed facedown. K.R. felt Harper rub "creamy, slimy stuff" on her bottom that she identified as coming from a bottle in a drawer in Harper's bedside table. Harper removed his underwear, sat on K.R., and put his "wiener" into her "B-U-T-T" while "moving up and down . . . [a]gain and over and over and over again." K.R. reported that "[i]t hurted" and she asked Harper to stop, but he told her to calm down. K.R. initially stated that this happened when she was "two, maybe one" but immediately corrected herself, stating, "No, I don't think, no. Um probably four or five."

K.R. disclosed another incident in which Harper applied "white creamy stuff" to his penis, got on top of her, and inserted his penis into her mouth. She described it as, "he goes like up, down, up, down . . . like a push up," and Harper "was saying like um, like he liked it." K.R. reported that "[i]t felt all gushy and all

yucky" and when she went into the bathroom afterward to rinse her mouth, "this white gooey like slimy stuff" came out. K.R. stated that she was "four or five" when this happened.

K.R. also recounted an incident in which she was lying down pretending to take a nap, and Harper came into her room, pulled down her pants and underwear, and "put his finger in my back," and "it really, really, really hurted." K.R. clarified that by "back" she meant "B-U-T-T." Harper then removed his finger and put it in her "front" or "pee-pee." K.R. was "about maybe six" at this time. K.R. told Webster that Harper had penetrated her vagina and anus with his finger on multiple occasions.

Dr. Rebecca Wiester, a pediatrician at the Harborview Center for Sexual Assault and Traumatic Stress, also met with K.R. K.R. disclosed to Dr. Wiester that Harper's "private part" touched her on her "back private part" and that it hurt. However, K.R. stated that she couldn't tell if actual penetration had occurred. K.R. also reported that something had come out of Harper's body into her mouth and that she did not like it. Dr. Wiester performed a physical examination of K.R., which was normal.[1]

---

[1] Dr. Wiester testified at trial that "in cases where it's been a delayed disclosure, in other words, something hasn't happened for weeks or months," the likelihood of a visible injury remaining was "probably less than five percent."

The State charged Harper with four counts of first degree rape of a child with domestic violence enhancements, committed between October 10, 2006, to October 9, 2010, when K.R. was between four and seven years old. The basis for the four counts was the four separate incidents described by K.R. to Webster: (1) Harper penetrating her anus with his penis when she was four or five years old, (2) Harper penetrating her mouth with his penis when she was four or five years old, (3) Harper penetrating her anus with his finger when she was six years old, and (4) Harper penetrating her vagina with his finger when she was six years old.

At trial, the State presented the testimony of Luft, Conover, Webster, Dr. Wiester, Detective Patty Neorr of the Redmond Police Department, K.R.'s foster parents, and K.R. The State also played the videotape of Webster's child interview with K.R.

In her testimony, K.R. described the incident following the breaking of the glass door, stating that after Harper removed glass from her foot, he penetrated her vagina and anus with his penis, and it hurt. Her description of that incident was consistent with her prior statements to Webster. When asked whether Harper had ever put his penis inside her mouth, K.R. stated that she could not remember. K.R. also did not remember how many times Harper had abused her.

During the middle of her testimony, K.R. began to cry, and the trial court took a recess. Harper's defense counsel did not cross-examine K.R.

After the State rested its case, Harper moved to dismiss the charges. The trial court denied the motion. Harper did not put on a case.

A jury convicted Harper on all four counts. As part of Harper's sentence, the sentencing court imposed the following no-contact order:

> For the maximum term of life, defendant shall have no contact, direct or indirect, in person, in writing, by telephone, or through third parties with: Any minors without supervision of a responsible adult who has knowledge of this conviction. A sexual deviancy treatment provider's permission to have contact with children is required. Stacy Harper is not allowed to supervise.

In addition, as part of Harper's community custody conditions, the sentencing court prohibited Harper from having "direct and/or indirect contact with minors."

Harper appeals.

## DECISION

### Sufficiency of the Evidence

When reviewing a claim of insufficient evidence, this court must decide "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt.'"[2] In challenging the sufficiency of evidence, the defendant admits the truth of the State's evidence and all inferences that reasonably can be drawn from it.[3] Credibility determinations are reserved for the trier of fact; thus, we defer to the jury on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[4]

Harper makes several challenges to the sufficiency of the evidence. First, Harper contends that K.R.'s testimony contained too many inconsistencies to support the convictions. Second, Harper claims that the State failed to prove when the abuse took place. Third, Harper argues that the State did not present sufficient evidence of penetration to support the convictions involving anal intercourse. Finally, Harper asserts that the two counts involving digital penetration were part of the same conduct.

To convict Harper of first degree rape of a child, the State must prove that Harper had sexual intercourse with K.R. during a time when K.R. was less than

---

[2] State v. Ortiz, 119 Wn.2d 294, 311-12, 831 P.2d 1060 (1992) (internal quotation marks omitted) (quoting State v. Bingham, 105 Wn.2d 820, 823, 719 P.2d 109 (1986)).

[3] State v. Spruell, 57 Wn. App. 383, 385, 788 P.2d 21 (1990).

[4] State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

12 years old and Harper was at least 24 months older than K.R.[5] "Sexual intercourse" is defined in RCW 9A.44.010(1):

"Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

1. Inconsistencies in K.R.'s Statements

Harper argues that K.R.'s story was too "confused and inconsistent" to support convictions on all four counts. Specifically, Harper claims that K.R.'s inability at trial to remember certain details she had previously disclosed about the abuse, such as when it began, how old she was, and whether it had even happened, requires reversal. We disagree.

As to the first count involving the "glass door" incident, K.R. told Webster that she was in the bathtub when the door shattered and that while she was still naked from the bath, Harper took her to his bedroom, removed a piece of glass from her foot, and placed her on her stomach on the bed. Harper applied a creamy substance from a bottle in his bedside table to K.R.'s bottom and

_____

[5] RCW 9A.44.073.

penetrated her anus with his penis. K.R. could see Harper moving up and down on top of her. She felt pain and begged Harper to stop, but he refused. K.R. also disclosed to Dr. Wiester that Harper touched her anus with his penis and it hurt. At trial, K.R.'s testimony was consistent with her earlier disclosures. She testified that after the door broke, Harper took her to his bedroom while she was still naked, removed the glass, placed her on her stomach on his bed, and penetrated her anus with his penis, causing her pain.

As to the second count involving oral penetration, K.R. told Webster that Harper applied a creamy substance from a bottle to his penis, got on top of her, and inserted his penis into her mouth. K.R. felt Harper ejaculate into her mouth and spat out "white gooey like slimy stuff" when she went to the bathroom afterward to rinse her mouth. K.R. told Dr. Wiester that something had come out of Harper's body when he put his penis in her mouth and she did not like it. At trial, when asked if Harper had ever touched her mouth with his penis, K.R. stated that she could not remember.

As to the third and fourth counts regarding digital penetration, K.R. told Webster that Harper had put his finger into both her vagina and her anus on several occasions. She recounted one incident in which she was pretending to take a nap, and Harper pulled down her pants and underwear and penetrated

first her anus and then her vagina with his finger. K.R. described the incident as extremely painful. However, at trial, when asked whether Harper had touched her vagina with anything other than his penis, K.R. responded, "Just his penis."

Because we resolve a challenge to the sufficiency of the evidence by viewing the evidence in the light most favorable to the State, the mere existence of inconsistent or differing evidence does not negate the sufficiency of the State's evidence.[6] The jury heard testimony regarding four separate incidents of sexual abuse. The evidence, viewed in the light most favorable to the State, supported conviction on all four counts.

Relying on State v. Alexander,[7] Harper argues that the inconsistencies in K.R.'s testimony were so extreme that a rational jury could not have found beyond a reasonable doubt that he sexually abused her on four separate occasions. In Alexander, a child victim of sexual abuse contradicted herself multiple times during her testimony regarding the chronology of the abuse and whether the events occurred at all.[8] In addition, the victim's testimony differed from other witnesses' accounts of the abuse.[9] This court reversed the

---

[6] State v. Rafay, 168 Wn. App. 734, 843, 285 P.3d 83 (2012), review denied, 176 Wn.2d 1023 (2013).
[7] 64 Wn. App. 147, 822 P.2d 1250 (1992).
[8] Alexander, 64 Wn. App. at 149-50.
[9] Alexander, 64 Wn. App. at 150.

-10-

convictions, holding that these "extreme" inconsistencies, combined with other errors, denied the defendant a fair trial.[10]

The facts of this case are distinguishable from Alexander. Here, K.R.'s prior statements regarding the "glass door" incident were entirely consistent with her trial testimony. While K.R. could not remember or repeat some aspects of the other three incidents at trial, this went to K.R.'s credibility, which is the sole province of the trier of fact. We will not review the jury's determination of K.R.'s credibility on appeal.

2.    Whether the Acts Occurred during the Charging Period

Harper contends that because the State included the charging period in the "to-convict" instruction, the State was obligated to prove beyond a reasonable doubt that the abuse took place between October 10, 2006, and October 9, 2010.[11] He argues that the State did not meet this burden because K.R.'s reports of how old she was when the abuse occurred were hazy or inconsistent. But the jury heard evidence that the anal and oral penetration occurred when K.R. was four or five years old and the digital penetration of her vagina and anus occurred

---

[10] Alexander, 64 Wn. App. at 158.

[11] See State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998) (in criminal cases, the State may assume the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the to-convict instruction).

when she was six years old. Again, viewed in the light most favorable to the State, the evidence was sufficient to establish that the events occurred during the charging period.

### 3. Evidence of Anal Penetration

Harper contends that the State did not present evidence that he actually penetrated K.R.'s anus with either his penis or his finger. In doing so, Harper relies on State v. A.M.,[12] in which this court held that penetration of the buttocks, but not the anus, was insufficient to sustain a conviction for first degree rape of a child. The facts of this case are different from the facts in A.M. In A.M., the victim testified that the defendant's penis went inside his buttocks but was unwilling to say that it went inside his anus.[13] The trial court concluded that "penetration of the buttocks, but not the anus" was sufficient to meet the definition of "sexual intercourse."[14] This court reversed, holding that the ordinary meaning of the term "sexual intercourse" did not encompass penetration of the buttocks in the absence of penetration of the anal cavity.[15]

---

[12] 163 Wn. App. 414, 416, 260 P.3d 229 (2011), review denied, 175 Wn.2d 1009 (2012).
[13] A.M., 163 Wn. App. at 417-18.
[14] A.M., 163 Wn. App. at 418.
[15] A.M., 163 Wn. App. at 420-21.

Here, there was ample evidence that Harper penetrated K.R.'s anus with both his penis and his finger. K.R. told Webster that Harper had put his "wiener in [her] B-U-T-T" and that she could feel it "when he puts it in." She reported that this incident caused her significant pain. K.R. also disclosed that Harper put his finger in her "B-U-T-T" and that she felt pressure "like a rock or maybe like something like that." She stated that it "really, really, really hurt." This evidence, viewed in the light most favorable to the State, indicated that Harper's penis and finger penetrated K.R.'s anus, not just her buttocks.

4. Separate Acts of Digital Penetration

Harper contends that the incident in which he digitally penetrated K.R.'s anus and then her vagina while K.R. was pretending to nap did not constitute two distinct events and therefore did not support two separate charges. But the unit of prosecution for rape of a child is "sexual intercourse," which includes "any penetration, however slight" of the vagina or anus.[16] We agree with the State that the facts of this case are similar to the facts in State v. Tili.[17] In Tili, during a single incident of sexual assault, the defendant forcibly penetrated the victim's anus with his finger, then removed his finger from her anus, and penetrated her

---

[16] RCW 9A.44.010(1)(a), (b).
[17] 139 Wn.2d 107, 985 P.2d 365 (1999).

vagina with his finger. The defendant then proceeded to insert his penis into her vagina. The Washington Supreme Court affirmed the defendant's convictions for three counts of first degree rape, holding that because "sexual intercourse" was complete upon any penetration, the defendant committed three independent acts of rape by committing three independent acts of penetration.[18] Here, Harper penetrated K.R.'s anus, then her vagina, with his finger. He inserted his finger into these two orifices separately, not at the same time. Because Harper committed two separate acts of penetration, the jury appropriately convicted him on two separate counts of first degree rape of a child.

Ineffective Assistance of Counsel

Harper contends that defense counsel's performance was constitutionally ineffective. Specifically, Harper claims that defense counsel was generally inexperienced and failed to satisfactorily cross-examine the State's witnesses, including K.R., or call witnesses on Harper's behalf.

Claims of ineffective assistance of counsel present mixed questions of law and fact, which we review de novo.[19] To prevail on a claim of ineffective assistance, a defendant must satisfy the two-prong test under Strickland v.

---

[18] Tili, 139 Wn.2d at 117.
[19] In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).

Washington,[20] showing (1) that counsel's performance fell below an objective standard of reasonableness based on a consideration of all the circumstances and (2) that the deficient performance prejudiced the trial.[21] The reasonableness inquiry presumes effective representation and requires the appellant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[22] To show prejudice, the appellant must prove that but for the deficient performance, there is a reasonable probability that the outcome would have been different.[23] When an appellant raises an ineffective assistance of counsel claim on direct appeal, we do not consider matters outside the trial record.[24]

In support of his claim that defense counsel was inexperienced, Harper cites to only one instance in the record. On the morning of trial, defense counsel provided a three-page proposed jury questionnaire. The trial court suggested using its own standard questionnaire, which was similar in content but fit the questions on a single page. Defense counsel had no objection, stating, "I didn't know the policies usually with this kind of case." Defense counsel's lack of

---

[20] 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[21] Strickland, 466 U.S. at 687; State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007).
[22] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).
[23] In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).
[24] McFarland, 127 Wn.2d at 335.

familiarity with the trial court's preference regarding jury questionnaires does not suggest that defense counsel was inexperienced generally or in the area of child sex abuse cases.

Harper also fails to show that defense counsel's trial performance was deficient or resulted in prejudice. Although Harper contends that defense counsel should have cross-examined K.R. to point out the inconsistencies in her testimony, we presume defense counsel made a reasonable and strategic decision not to question a crying child in order not to arouse the sympathy of the jury further or open the door to more detailed testimony about the abuse. Moreover, even without cross-examining K.R., defense counsel was adequately able to argue to the jury that her inability to remember some of the incidents at trial should constitute reasonable doubt. As to the State's other witnesses, Harper does not identify what questions he believed defense counsel failed to ask. Harper's bare assertion that defense counsel's cross-examination techniques "proved detrimental to the case" is insufficient.

Harper's claim that defense counsel was ineffective for failing to call a defense investigator to testify is similarly without merit. Harper does not explain how the outcome of his trial would have differed had the investigator testified and therefore does not show that he was prejudiced by defense counsel's action.

Sentencing Condition Involving Contact with Minor Children

Under RCW 9.94A.505(8), a trial court may impose "crime-related prohibitions" for a term of the maximum sentence to a crime, independent of conditions of community custody.[25] "Crime-related prohibitions" are orders directly related to "the circumstances of the crime."[26] Determining whether a relationship exists between the crime and the condition "'will always be subjective, and such issues have traditionally been left to the discretion of the sentencing judge.'"[27] Thus, we review sentencing conditions for abuse of discretion.[28]

Harper argues that the trial court exceeded its authority by imposing a sentencing condition prohibiting unsupervised contact with minor children. He claims the condition interferes with his constitutional right to parent his own biological children and is not reasonably crime-related because there was no evidence he posed a risk to his own children.

A parent has the constitutional right to raise children without State interference, but a sentencing court may impose limitations on this right when

---

[25] State v. Armendariz, 160 Wn.2d 106, 112, 120, 156 P.3d 201 (2007).
[26] Former RCW 9.94A.030(13) (2006).
[27] State v. Parramore, 53 Wn. App. 527, 530, 768 P.2d 530 (1989) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON 4-7 (1985)).
[28] State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993).

reasonably necessary to further the State's compelling interest in protecting children.[29] Citing State v. Letourneau,[30] Harper argues that the sentencing court lacked the authority to restrict contact with his own children because there was no evidence he ever molested them or posed a risk to them. But Letourneau is inapposite because the victim in that case was the defendant's student, not a family member who lived in the home. Here, the condition restricting contact between Harper and minor children is clearly crime-related. While Harper was not K.R.'s biological parent, he lived with her in a parent-child relationship and committed the abuse in the home. He used his relationship with K.R. to gain her trust and to get her alone. Moreover, at the time of trial, Harper's biological children were three and seven, making them similar in age to the age K.R. was when Harper abused her. Restricting Harper's contact with his biological children was reasonably related to preventing Harper from committing the same abuse that he committed against K.R. Although Harper argues that his abuse of K.R., his stepdaughter, is insufficient to show that he was at risk to abuse his biological

---

[29] State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).
[30] 100 Wn. App. 424, 997 P.2d 436 (2000).

-18-

son,[31] we agree with the State that the abuse Harper committed against K.R. involved incidents of anal and oral penetration, which are not gender-specific.[32]

Furthermore, the condition that Harper challenges is narrowly tailored to meet the State's objectives. Harper is not restricted completely from having contact with his biological children. Rather, Harper must first get the permission of a sexual deviancy treatment provider, and the contact must be supervised by a responsible adult who has knowledge of Harper's conviction. Accordingly, we affirm Harper's sentencing condition prohibiting contact with all minor children, including his biological children, as a valid crime-related prohibition that does not unduly burden his fundamental parenting rights.

Affirmed.

_Leach, C.J._

WE CONCUR:

_Dwyer, J._                     _Cox, J._

---

[31] Harper argues that the sentencing condition should be stricken because the "father-son contact" does not pose a danger to his "sons." However, the record indicates that Harper's biological children with K.R.'s mother include both a son, I.H., and a daughter, J.H.

[32] See, e.g., State v. Corbett, 158 Wn. App. 576, 600, 242 P.3d 52 (2010).

-19-